IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BLUES TO YOU, INC., | ) | Case No. 1:21-CV-00165 |
| *doing business as* Wilbert's | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | **ORDER** |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

It's an old adage that "you can't make an omelet without breaking eggs."[1]  In this action, plaintiff felt betrayed when it thought its insurance carrier mishandled two separate property loss claims.  And the insurance company and plaintiff were unable to arrive at a negotiated compromise before or after suit was filed.  So, they decided to endure an expensive trial in order to vindicate their positions.  Unfortunately for the parties, their efforts did not produce an omelet, but left us with only a few cracked shells.

On April 12, 2022, following a six-day trial, a jury returned verdicts in favor of Blues To You, Inc. on breach of contract and bad faith claims arising from the handling of two separate claims Blues To You made on 2019 and 2020 insurance policies issued by the defendant, Auto-Owners (Mutual) Insurance Company.  On April 14, 2022, a final judgment was entered. ECF Doc. 150.  Subsequently, Blues To You timely moved for attorney's fees (ECF Doc. 153)

---

[1] The Free Dictionary, https://idioms.thefreedictionary.com/you+can%27t+make+an+omelette+without+breaking+eggs (search under the "idioms" tab "you can't make an omelet without breaking eggs") (last visited October 17, 2022).

and prejudgment interest (ECF Doc. 154).  Further, on May 12, 2022, Auto-Owners separately moved for judgment as a matter of law under Fed. R. Civ. P. 50(b) (ECF Doc. 163); for a new trial or, alternatively, remittitur under Fed. R. Civ. P. 59 (ECF Doc. 164); and for remittitur (ECF Doc. 165).  All of the motions are ripe for decision.

Upon consideration, the court finds that a new trial on the issue of compensatory damages should be granted unless plaintiff accepts a remittitur of its compensatory damages to the sum of $231,374.23.

## I.    Background

On September 26, 2019, *Wilbert's*, a bar operated by Blues To You, a corporation wholly owned by Michael Miller, suffered damage from a fire in its kitchen.  Blues To You rented the space for *Wilbert's* in the Caxton Building in downtown Cleveland.  The next day, Miller began the claim-filing process with Auto-Owners.  After initial direct interactions with an Auto-Owners' adjuster, Miller hired a public adjuster, Robert McEaneney, to represent Blues To You.

Auto-Owners agreed that the fire damage was covered under the 2019 policy and that Blues To You had fully paid its insurance premiums for that policy year.  Auto-Owners' claims agent, Wade Feielin, hired an independent adjuster, Michael Coduto, to adjust the loss.  In March 2020, while the 2019 claim was still open, Auto-Owners renewed Blues To You's insurance policy for *Wilbert's* at Miller's request.  The 2019 and 2020 policies had nearly identical terms.

By September 29, 2020, Auto-Owners and Blues To You still had not resolved the claim regarding the 2019 loss.  But that day, a fire broke out in an apartment above the bar's leasehold space, causing water damage in *Wilbert's*.  Blues To You filed a new claim based on the water damage (the 2020 claim).  After Auto-Owners informed Blues To You that it was investigating

the claim and would require a further 45 days before deciding whether it would accept or reject the 2020 claim, the insurer never followed up.  As a result, Blues To You filed this action.

The case proceeded to trial, and the jury returned a verdict of $716,668 in compensatory damages and $154,665 in consequential damages on claims of breach of contract and bad faith related to each insurance claim filed.  The aggregate compensatory and consequential damage award was $871,333.  The jury also awarded punitive damages of $375,000 and determined that Blues To You was entitled to an award of attorney's fees.  Blues To You claims a right to $293,161.02 in attorney's fees and costs.

## II.     Motion for a New Trial[2]

### A.     Arguments

Auto-Owners contends that a new trial should be granted for the same reasons asserted in its motion for judgment as a matter of law – primarily because "the verdict was against the weight of the evidence and controlling law and agreements between the parties."  ECF Doc. 164 at 2.  And it offered three additional reasons: first, it contends that the court erred in admitting portions of Robert McEaneney's testimony, which it argues constituted unqualified expert testimony on whether there was reasonable justification for Auto-Owners' actions.  ECF Doc. 164 at 2-5.  Second, it argues that the court erred in prohibiting witness Katie Dugan from testifying.  ECF Doc. 164 at 11-13.  Third, it asserts that the court erred by failing to instruct the jury on the content of and/or how to interpret specific provisions in the insurance policies.  ECF Doc. 164 at 5-11.  Blues To You opposes the motion.  *See* ECF Doc. 173.

---

[2] Because issues raised in Auto-Owners' Rule 50(b) and Rule 59 motions overlap, Auto-Owners' motion for a new trial will be addressed first.  *See Hoback v. City of Chattanooga*, No. 1:10-CV-74, 2012 U.S. Dist. 124794, at *9 (E.D. Tenn. Sept. 4, 2012) (noting that when Rule 50(b) motions and new trial motions cover the same issues, new trial motions should be addressed first because "evidence sufficient to withstand a new trial challenge will be sufficient to withstand a motion for judgment as a matter of law.") (citing Fed. R. Civ. P. 50(a) and *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007)).

## B.    Legal Standard

Federal Rule of Civil Procedure 59 provides that, after a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Generally, "'a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (quoting *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996)).  "[I]n finding that a jury's verdict was against the weight of the evidence, the judge must, to some extent at least, substitute[] his judgment of the facts and the credibility of the witnesses for that of the jury." *Id.* (Internal quotation marks omitted and alterations in original).  However, the court may not set aside the verdict "simply because it believes that another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (citing *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981)).  If the verdict is "one which reasonably could have been reached," the court may not grant a motion for a new trial.  *Id.* (citing *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

## C.    Analysis

The court will first address the three enumerated reasons Auto-Owners raises before considering its general argument that the verdicts were against the weight of the evidence, contrary to controlling law, and contrary to the parties' contracts.

4

### 1.    Robert McEaneney's Testimony

Auto-Owners contends that the court erred in permitting Robert McEaneney to testify regarding whether it acted in good faith and with reasonable justification in the handling of Blues To You's claims. ECF Doc. 164 at 3.  Its challenge is two-fold.  First, it argues that expert testimony is required to prove bad faith. ECF Doc. 164 at 3-4.  Second, it asserts that because McEaneney had no experience working as an adjuster for an insurance company, he did not qualify as an expert on claims handling – from the insurance company's perspective – and testified to the incorrect bad faith standard. ECF Doc. 164 at 3-5.  These errors, it argues, confused the jury and, thus, require a new trial. ECF Doc. 164 at 3-5.

In response, Blues To You contends that Auto-Owners' argument challenges the credibility, rather than the reliability, of McEaneney's testimony and, thus, a new trial is not necessary on this ground. ECF Doc. 173 at 3-6.  It also argues that, even if an error, the inclusion of McEaneney's testimony was harmless because Auto-Owners submitted little evidence in mitigation of the claimed damages. ECF Doc. 173 at 6.

The proponent of expert testimony must demonstrate that the expert is qualified by his "knowledge, skill, experience, training, or education" and:

> (1) that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) that "the testimony is based on sufficient facts or data"; (3) that "the testimony is the product of reliable principles and methods"; and (4) that "the expert has reliably applied the principles and methods to the facts of the case."

*Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) (quoting Fed. R. Evid. 702).  "[W]hen parties offer expert testimony, the district court must determine whether the testimony is relevant and reliable before allowing its admission."  *Nelson v. Costco Wholesale Corp.*, No. 21-5666, 2022 U.S. App. LEXIS 2634, at *4 (6th Cir. 2022) (unreported).

Whether the court may deem a witness an expert based on his expertise depends on the nature and extent of that experience.  *See United States v. Cunningham*, 679 F.3d 355, 378 (6th Cir. 2012).  Conclusory assertions of experience are insufficient; the proponent of the expert's testimony must show that "those qualifications provided a foundation for him to answer a specific question."  *Nelson*, 2022 U.S. App. LEXIS 2634, *8.

Auto-Owners has not shown that the jury reached a seriously erroneous result by being able to consider McEaneney's testimony.  *See* Fed. R. Civ. P. 59(a)(1)(A); *Mosby-Meachem*, 883 F.3d at 606.  First, as to the alleged "requirement" that bad faith claims must be supported by expert testimony, Auto-Owners' argument is not well taken.  In repeatedly raising this argument (before and during trial and in the current motion), Auto-Owners has failed to support its argument.  *See* ECF Doc. 156 at 16-19, 103-105; ECF Doc. 163 at 11; ECF Doc. 164 at 3-5. Although Auto-Owners cites cases (notably even fewer now than at trial), not one holds that expert testimony is *required* to succeed on a bad faith claim.

Auto-Owners presents no reason – legal or policy – for such a *per se* requirement, nor has it articulated why those cases cited, in which courts have approved the use of an expert, are so analogous that such should have been required in this case.  And entry-level research refutes Auto-Owners' contention.  In *Baldwin's Ohio Practice*, the section addressing bad faith insurance claims states: "To prove bad faith in Ohio, expert testimony is not required."  *See* Baldwin's Oh. Prac. Tort L. § 31:69 (2d ed.).  Although *Baldwin's* notes that no opinion has *excluded* such testimony, the lack of such evidence alone is an insufficient basis for granting a new trial.  *Denhof*, 494 F.3d at 543; Baldwin's Oh. Prac. Tort L. § 31:69 (2d ed.).  Accordingly, the court once again rejects Auto-Owners' argument.

6

As to McEaneney's expertise, although his experience was one-sided, it did not render him unqualified to testify in the limited capacity granted by the court.  An expert's incomplete knowledge of a field is not dispositive in determining the admissibility of his testimony.  *See Bible v. Wal-Mart Stores*, No. 91-6490, 1992 U.S. App. LEXIS 27048, at *5-6 (6th Cir. 1992) (unreported) ("An expert need not have complete knowledge of the field in question as long as the knowledge possessed will assist the trier of fact.  Thus, even when an expert witness is not certain or is biased, expert testimony is not automatically rendered inadmissible." (internal citations omitted)).  Auto-Owners does not attack McEaneney's qualifications as an insurance claims adjuster, his years of experience, or his knowledge about claims handling from the insured's standpoint.  *See* ECF Doc. 164 at 2-5.  Rather, it contends that it was an error to admit his opinions because McEaneney lacked experience specifically from the insurer's perspective. The argument fails to persuade.

In this aspect, Auto-Owners applies the same logic as the defendant in *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008).  There, the defense challenged the plaintiff's expert's opinion, asserting it was based on erroneous data which yielded a flawed conclusion. *Id.* at 529-531.  But because the expert provided a foundation for how and why he analyzed the data as he did, the Sixth Circuit affirmed the district court's ruling that the testimony was admissible because the defense's challenge went to the credibility of the expert's opinion rather than its reliability.  *Id.* at 531.  In doing so, the court held that "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation. . . . ."  *Id.* at 529 (citing Fed. R. Civ. P. 702).

Auto-Owners' challenge to the foundation of McEaneney's testimony, just as the challenge to the validity of a witness's underlying data, is distinct from the assertion that McEaneney had *no* foundation.  Because Auto-Owners only challenges the one-sided nature of McEaneney's experience, its challenge goes to weight and credibility.  *See Scrap Metal Antitrust Litig.*, 527 F.3d at 529.  McEaneney had years of claims adjusting experience, had adjusted thousands of claims, and was knowledgeable in the field of claims adjustment from the insured's perspective.  All of that experience qualified him to opine on whether he was aware of any justifications for the actions taken (or not taken) by Auto-Owners during its review of Blues To You's claims.  *See Bible,* 1992 U.S. App. LEXIS 27048, at *5-6; ECF Doc. 157 at 104-181.

Because of McEaneney's one-sided history, Auto-Owners also argues he was unqualified to speak to whether Auto-Owners' conduct constituted bad faith.  *See* ECF Doc. 164 at 4-5.  To an extent, Auto-Owners is correct.  At trial, the court distinguished between McEaneney's ability to testify as to whether he was aware of any justification (*i.e.*, any reason) for various perceived delays on Auto-Owners' part and any testimony that reflected his opinion of how Auto-Owners performed, such as whether Auto-Owners' adjuster Michael Coduto made mistakes, which the court prohibited McEaneney from testifying about.  *See* ECF Doc. 157 at 175-179.

But Auto-Owners' takes particular umbrage with Blues To You's line of inquiry about whether McEaneney was aware of "any justification" for various delays in the claims handling process.  It contends these questions should have been excluded because McEaneney's one-sided experience rendered him unqualified to speak on the bad faith standard.  *See* ECF Doc. 164 at 3.  Under Ohio law, a defendant may act in bad faith if they act "without reasonable justification."  *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 555 (1994).  The similarity between legal

standard and question, Auto-Owners' infers, was a reference to Ohio's bad faith standard.  *See ECF Doc. 164 at 3-5*.  But the question of "similarity" is more involved.

Just because both use "justification" does not render McEaneney's answers impermissible.  So long as the question posed "does not involve terms with separate, distinct specialized meaning in the law different from that present in the vernacular, then the witness may answer it over the objection that it called for a legal conclusion."  *United States v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir. 1995) (citing *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985)); *see also Woods v. Lecureux*, 110 F.3d 1215, 1219-1220 (6th Cir. 1997) (applying *Sheffey* to expert testimony).  And Ohio's bad faith standard is more detailed; "[a] lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner." *Horak v. Nationwide Ins. Co.*, 2007-Ohio-3744, at *21 (9th Dist. July 25, 2007).

In the context of Blues To You's questions, the word "justification" was not, *per se*, a term of law.  *See ECF Doc. 157 at 184-186*.  Blues To You's questions merely asked whether McEaneney was aware of any reason for Auto-Owners' conduct; it did not stray into telling the jury what result to reach (*e.g.*, that Auto-Owners had acted arbitrarily in delaying the handling of Blues To You's claims); rather, it amounted to factual statements based on his personal knowledge of what had been taking place and in light of his own experience as an independent adjuster (*i.e.*, that Auto-Owner failed to provide an explanation for the perceived delays).  *See, e.g.*, *Torres*, 758 F.2d at 151 (holding that "when a witness was asked whether certain conduct was "unlawful," the trial court properly excluded the testimony since "terms that demand an understanding of the nature and scope of the criminal law" may be properly excluded").

Even if one of McEaneney's answers was improper, any error would be considered harmless in light of the court's curative instruction.  The court instructed the jury that:

> Mr. Robert McEaneney is not qualified to provide opinions on what does and does not constitute good or bad faith in adjusting insurance claims, and during your deliberations you shall not take into consideration anything you heard during his testimony that you may understand to be an opinion from Mr. McEaneney as to whether Auto-Owners acted in good faith or bad faith.  However, you may consider – you may consider and give such weight as you find proper to the testimony of witness McEaneney in his capacity as a public adjuster.

ECF Doc. 160 at 130-131.  Even had the jury been confused as to whether McEaneney was speaking legally or colloquially, the court assumes the jury followed its instruction not to consider McEaneney's opinion as going to the ultimate legal issue of bad faith.  *See United States v. Stuckey*, 253 F. App'x 468, 491 (6th Cir. 2007) (holding that reversal of a conviction was unnecessary because there were only a few improper statements or actions, most of which were unobjected to, and the trial court issued a curative instruction on the objected-to instance); *United States v. Rodgers*, 85 F. App'x 483, 486 (6th Cir. 2004) (holding that jurors are presumed to follow curative instructions).

Because expert testimony on bad faith was not required and McEaneney's testimony was not erroneously admitted, Auto-Owners has not shown that the admission caused the jury to reach a "seriously erroneous result."  *See Mosby-Meachem*, 883 F.3d at 606.

## 2. Exclusion of Katie Dugan Testimony

Auto-Owners contends that the court should have permitted Katie Dugan of Cincinnati Insurance Company to testify as a witness because Blues To You's counsel caused the delays that made it impossible to depose Dugan, noting that Auto-Owners was under "no obligation" to go to the efforts it did to ensure Dugan was deposed prior to her trial testimony.  *See* ECF Doc. 164 at 11-12.  Blues To You disagrees.  ECF Doc. 173 at 14-15.

10

Auto-Owners glosses over the fact that it failed to timely include Katie Dugan in its disclosures of trial witnesses.  Unless the failure to identify a witness as required by Rule 26(a) or (e) is "substantially justified or harmless," a party is not allowed to use that witness at trial. *See Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (internal quotation marks omitted). Under Rule 37(c)(1), the district court may order sanctions, in alternative to excluding an undisclosed witness, on motion or after giving the parties an opportunity to be heard. *Id.*

Auto-Owners has not shown that the exclusion of Dugan's testimony led to a "seriously erroneous" result.  *See* Fed. R. Civ. P. 59(a)(1)(A); *Mosby-Meachem*, 883 F.3d at 606. Auto-Owners first indicated Dugan was a potential witness in its witness list filed on March 21, 2022, a few days prior to the scheduled trial.  *See* ECF Doc. 97.  Under Rule 26(a), however, Auto-Owners' initial disclosures were required to include the name for each individual "likely to have discoverable information." Fed. R. Civ. P. 26(a).  Auto-Owners filed its initial disclosures on March 29, 2021.  ECF Doc. 11.  But neither they, nor any of Auto-Owners' later responses to Blues To You's written discovery or supplementary responses to its initial disclosures, identified Dugan as an individual likely to have discoverable information.  *See* ECF Doc. 31-37, ECF Doc. 31-38, ECF Doc. 31-40; ECF Doc. 31-41.  Consequently, Auto-Owners' disclosure of Dugan in its witness list was noncompliant with the obligations of Rule 26.

In response to Blues To You's motion to exclude Dugan from being permitted to testify, the court conditionally excluded Dugan from testifying but provided Auto-Owners the opportunity to cure the violation if Auto-Owners could make her available for a mid-trial deposition, because her name had been mentioned in other discovery.  *See* ECF Doc. 126; ECF Doc. 128.  Following that order, both parties made efforts to complete Dugan's deposition but were ultimately unsuccessful.  *See* ECF Doc. 130, ECF Doc. 157 at 181-183.  Based on the

failure of these efforts, the court fully enforced its order on the third day of trial, excluding Dugan from testifying because of Auto-Owners' Rule 26 violation and its inability to cure the violation.  ECF Doc. 157 at 182-183.

Although Dugan's name was referenced in discovery, Auto-Owners needed to cure any prejudice its violation caused.  *See* ECF Doc. 128.  None of Blues To You's actions during the Dugan mid-trial deposition with which Auto-Owners takes issue demonstrate bad faith on Blues To You's part.  Limited availability, the need for foundational questions, and motions for reconsideration are all part of litigation.  ECF Doc. 164 at 11-12.  Auto-Owners is correct that it was not obligated to put forth effort to make Dugan available for deposition; it could have accepted the court's order excluding her trial testimony.  As the Ninth Circuit has aptly noted, "counsel [] would have made more effective[] presentations had [it] devoted less attention to [the] other's shortcomings as [a] lawyer."  *See Tele-King Distrib. Co. v. Wyle*, 218 F.2d 940, 943 (9th Cir. 1955).  Auto-Owners' motion for new trial fails on this ground.

### 3.    Jury Instructions

Auto-Owners contends that the court's failure to incorporate specific portions of the insurance policy language into the jury instructions caused the jury to be confused about which provisions applied and how they were to be interpreted.  And it asserts that this warrants a new trial.  ECF Doc. 164 at 5-13.  Notably, Auto-Owners does not contend that the jury instructions somehow misstated Ohio law.  Rather, it contends that the instructions were incomplete because the court did not incorporate what Auto-Owners contends were the key provisions of the insurance policies into the jury instructions or expressly explain them to the jury.  Auto-Owners identified three policy provisions it argues should have been included in the jury instructions and/or have been explained: (1) that damages to the building structure were not recoverable by

12

Blues To You under Section A.2.k in the Business and Personal Property ("BPP") Coverage Form[3]; (2) that compensatory damages should have been capped at the coverage limits under the applicable BPP coverage; and (3) Blues To You was required to prove the actual cash value ("ACV") of its property losses as a condition precedent to any right to recover under the BPP coverage form and was not entitled to any payment under the replacement cost provision unless it actually replaced or repaired damaged items.  ECF Doc. 164 at 7-13.

Blues To You responds that such instructions were unnecessary because (i) it was Auto-Owners' burden to establish that the Cincinnati Insurance policy applied; (ii) the comprehensive general liability ("CGL") coverage limits applied in determining compensatory damages; and (iii) its replacement cost policy entitled it to payment of the replacement cost value ("RCV") of damaged property.  *See* ECF Doc. 173.

"Proper jury instructions should adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision."  *Scozzari v. City of Clare*, 653 F. App'x 412, 418 (6th Cir. 2016) (internal quotation marks omitted).  The court may set aside a verdict based on an erroneous jury instruction only when the instructions "'viewed as a whole, are confusing, misleading, or prejudicial.'"  *Id.* (quoting *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009)).  In other words, the omission of an instruction will be a reversible error if the omitted instruction was: (1) a correct statement of the law, (2) not substantially covered by the other charges, and (3) an impairment to the requesting party's theory of the case.  *Id.*

---

[3] Although Auto-Owners does not specify a section it contends the court should have referenced, based on the context of its arguments, the court infers that Auto-Owners' contentions related to Section A.2.k., which excludes coverage over property "more specifically defined" in another policy.  *See* ECF Doc. 164 at 7-10; Plaintiff's Exhibit 1 at 59.

In order to preserve an objection to an instruction, the party's objection must be timely made and be "sufficiently specific to bring into focus the precise nature of the alleged error." *Wheatt v. City of E. Cleveland*, Nos. 20-4017/20-4018, 2021 U.S. App. LEXIS 37194, at *6 (6th Cir. 2021) (unreported) (internal quotation marks omitted); *see also Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.,* 511 F. App'x 398, 405–06 (6th Cir. 2013) (stating that "imprecise objections will not preserve the matter for appeal").  But if it is "plainly apparent" from the context that the judge was aware of the party's dissatisfaction with the instruction and the specific basis for the claimed error, the objection will be treated as preserved. *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1236 (6th Cir. 1992).  The objection must also be renewed after the jury is instructed.  *See Scott v. Miller*, 361 F. App'x 650, 653 (6th Cir. 2010).

When an objection is not preserved, the court reviews the claim for plain error.  *See Wheatt*, 2021 U.S. App. LEXIS 37194, at *6; *Woodbridge*, 954 F.2d at 1236 (applying plain error review to a party's assertion that the court should have given an instruction on its own initiative).  It is a "very high standard."  *Alsobrook v. UPS Ground Freight, Inc.*, 352 F. App'x 1, 2 (6th Cir. 2009) (internal quotation marks omitted).  A plain error is "an obvious and prejudicial error that requires action by the reviewing court in the interest of justice."  *Wheatt*, 2021 U.S. App. LEXIS 37194, at *6 (internal quotation marks omitted).  The proceedings are examined "in their entirety in light of the proofs at trial," to determine if the error affected substantial rights. *See Rush v. Ill. Cent. R.R.*, 399 F.3d 705, 715 (6th Cir. 2005) (internal quotations marks omitted).

The advisory committee notes to the 2003 amendments to Federal Rule of Civil Procedure 51 provide:

> The court's duty to give correct jury instructions in a civil action is shaped by at least four factors.

> The factor most directly implied by a "plain" error rule is the obviousness of the mistake. The importance of the error is a second major factor. The costs of correcting an error reflect a third factor that is affected by a variety of circumstances. In a case that seems close to the fundamental error line, account also may be taken of the impact a verdict may have on nonparties.

Fed. R. Civ. P. 51 advisory committee's note (2003).

### a. Preservation

In its opposition brief, Blues To You asserts that Auto-Owners failed to preserve its objections to the jury instructions. *See* ECF Doc. 173 at 10-12.  In its reply brief, Auto-Owners contends that it preserved the objections, incorporating a section from its reply brief in support of its motion for remittitur, which asserts that it preserved the instructions based on its request for the inclusion of the Valuation and Loss Payment sections (Sections E.4.e. and g. of the BPP Coverage Form).  ECF Doc. 177 at 3-4; ECF Doc. 178 at 4.

Upon review of the record, the court concludes that Auto-Owners failed to preserve errors concerning each of their now-raised jury instruction arguments.  *See Wheatt*, 2021 U.S. App. LEXIS 37194, at *6.  Neither the Loss Payment nor the Valuation provisions refer to limits of coverage, the building's structure, or the handling of replacement cost claims.  And the Valuation provision only mentions the requirement to submit ACV values in passing, making no reference to the proofs of loss.  *See* Plaintiff's Exhibit 1 at 66-68.  Moreover, in its proposed jury instructions and joint proposed jury instructions, Auto-Owners never requested instructions based on the policies' provisions on the coverage for damages to the leasehold structure, the coverage limits, or the ACV and RCV proof requirements.  *See* ECF Doc. 95, ECF Doc. 124. Neither did Auto-Owners argue for the inclusion of the policy language at the charging conference, except for the Loss Payment and Valuation provisions.  ECF Doc. 160 at 61; *see* Plaintiff's Exhibit 1 at 66-68.  Further, following the court's charge to the jury, Auto-Owners

referred to Section A.2.k., but only as to an issue related to the court's articulation of burdens

and it did not request any instruction on the Section A.2.k. provision.  *See* ECF Doc. 160 at 161.

As such, Auto-Owners never requested jury instructions on these grounds, and its current claims

can only be reviewed for plain error.  *See Wheatt*, 2021 U.S. App. LEXIS 37194, at *6.

###### b.      Plain error review

Under plain error review, each of Auto-Owners' arguments regarding the requested

instructions fails.  *See Wheatt*, 2021 U.S. App. LEXIS 37194, at *6.  First, Auto-Owners has not

asserted a plain error defense of its contentions.  Nor did it articulate specifically how it contends

the jury should have been instructed.  As such, the court can only guess what language

Auto-Owners contends should have been included, the absence of which was such a plain error

that it warrants a new trial.

The court instructed the jury concerning the BPP coverage form, stating:

Under the insurance contracts, the parties agreed to include a "Building and
Personal Property Coverage Form."  Under that form, Auto-Owners provided
coverage to pay for direct physical loss or damage to covered property at the
premises described in the declarations caused by or resulting from any covered
cause of loss.  A copy of the insurance policy will be provided to you in the
exhibits, specifically Plaintiff's Exhibit 1.

*See* ECF Doc. 160 at 135-136.  It did not otherwise read excerpts from the insurance contract.

*See* ECF Doc. 160 at 121-169.  Auto-Owners' arguments could be construed as requesting either

(1) the court's recital of specific policy provisions as articulated in the insurance contracts, or

(2) an explanation of how those provisions could apply given the evidence adduced at trial.

It appears that Auto-Owners most likely intends to argue for the first, based on its citation

to the court's statement that it would instruct the jury on the applicable portions of policies when

the time came.  ECF Doc. 164 at 6.  Assuming this to be the case, Auto-Owners' arguments

amount to the contention that the court should have read portions of the policies to the jury,

despite the jury having the policy with them as an exhibit.  Such repetition at best would have been unnecessary, given that the jury had the policy and had been directed to the BPP coverage form, and, at worst, could have created prejudice within the instructions.  *See United States v. Walker*, 1 F.3d 423, 429-431 (6th Cir. 1993) (remanding a case for a new trial when the jury received a summary of a witness's proposed testimony, including highlighted inadmissible portions, during deliberations and the court prohibited the jurors' state of mind from being fully investigated); *Duncan*, 377 F.2d at 52 ("Courts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn difference inferences or conclusions or because judges feel that other results are more reasonable.").  Even assuming a more factually specific instruction, such would only create an error rather than remedy one.  *See United States v. Frost*, 125 F.3d 346, 372 (6th Cir. 1997) ("It is not error refuse to give special instructions which merely represent a defendant's view of the facts of the case.").

Further, and specific to the building's structure, Auto-Owners contends that without this instruction, the jury awarded damages based on Auto-Owners' failure to pay for claimed damage to the building's structure but that those damages were not covered under the policy because Blues To You failed to meet its burden of showing it was "covered property."  *See* ECF Doc. 164 at 7-10.  But no such prejudice exists because Auto-Owners' argument rests on a legal error in its understanding of the law.  Under Ohio law, although the insured bears the burden to prove coverage under the insurance contract, *see Motorists Mut. Ins. Co., v. Ironics, Inc.*, 2022-Ohio-841, ¶ 9, the application of an exception or exclusion of coverage is the *insurer's* burden because "[a]n insurer who claims that a policy exclusion prohibits insurance coverage must show that the exclusion specifically applies."  *Neal-Pettit*, 2010-Ohio-1829, ¶ 19 (citing *Cont'l Ins. Co. v. Louis Marx & Co., Inc.* 64 Ohio St. 399, 401 (1980) ("[A] defense based on an

exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it." (Internal quotation marks omitted and alteration in original)).

Auto-Owners has not cited any law to support its argument that Section A.2.k. was not an "exception" or "exclusion" to coverage (which, if shown, would have negated Auto-Owners' burden to prove the applicability of the exception or exclusion). *See generally* ECF Doc. 164. Based on this court's research, however, Section A.2.k. is an "excess clause," under which the insurer remains liable "up to the limits of the policy containing the excess clause." *See Monumental Paving & Excavating, Inc. v. Penn. Mfrs' Ass'n Ins. Co.*, 176 F.3d 794, 800 (4th Cir. 1999) (internal quotation marks omitted); *see also Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F. Supp. 2d 479, 488-489 (S.D. N.Y. 2002). And, under *Monumental*'s reasoning, Section A.2.k. is an exception to coverage. *See Monumental Paving & Excavating, Inc.*, 176 F.3d at 799.

Although Ohio courts have not addressed the Section A.2.k. clause, *Monumental*'s reasoning is persuasive authority on how Section A.2.k. operated. To exclude an otherwise covered item from coverage, it must be shown that another policy "more specifically described" the property at issue, thereby removing it from the scope of the insurer's primary liability. *See* Plaintiff's Exhibit 1 at 59. This removal from coverage is more than a negative means of defining coverage, because the item could have been covered under Auto-Owners' policy. Because Section A.2.k. actively removes coverage over an otherwise properly covered item, it excludes or creates an exception for such property. Thus, it was Auto-Owners' burden to prove that another policy more specifically described the property at issue. And this it failed to do, based on the jury's verdict. Further, Auto-Owners failed to offer in evidence what it contends was the other policy: the one issued by Cincinnati Insurance to the building owner. Essentially,

18

Auto-Owners is objecting because the court did not instruct the jury that another policy – which was not in evidence – more specifically described (and covered) the property for which Blues To You was submitting a claim.  This the court could not do.  Any such instruction would have usurped the function of the jury and would have injected error into the proceedings.

Although not specifically articulated in Auto-Owners' new trial motion – but clearly implicated in its arguments that the jury's verdicts were against the weight of the evidence and contrary to the parties' insurance contracts – it is evident that Blues To You's contentions at trial about what coverage parts of the policy were relevant to the claim missed the mark, as the court stated during the trial.  First, Blues To You's contention that the limits of coverage in the CGL form and not the limits in the BPP coverage form was (and is) misplaced.  The CGL provision provided that "[Auto-Owners] will pay those sums that the insured becomes legally obligated to pay as part of its damages because of 'bodily injury' or 'property damage.'"  *See* Plaintiff's Exhibit 1 at 110.  However, the purpose of CGL coverage is "to provide coverage for injuries that occur to the public-at-large."  *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 763 (6th Cir. 2014) (quoting *Amerisure Ins. Co. v. Orange and Blue Constr., Inc.*, 545 F. App'x 851, 855 (11th Cir. 2013)).  "[CGL] policies are designed to protect the insured from losses arising out of business operations, i.e., tort liability for physical damage to others . . . ."  *See Certain Interested Underwriters at Lloyd's London v. Halikoytakis*, No. 8:09-CV-1081, 2011 U.S. Dist. LEXIS 39807, at *15-16 (M.D. Fla. Mar. 31, 2011).  This is distinct from landlord/tenant insurance, which provides specific protection against liability for defective condition in or on the property itself.  *See Couch on Insurance* (3d ed.), Sect. 132:59.  Blues To You presented zero evidence that it ever became legally obligated to the public-at-large due to the damage; and the one claim that did arise (relating to damage to a parking structure) was paid by Auto-Owners under the

19

liability coverage.  Accordingly, the CGL coverage – and coverage limits – were irrelevant to the claims Blues To You asserted in this action.

Likewise, Blues To You's generic reliance on "having a replacement cost policy" was (and is) also misplaced.  Although it argues (without supporting legal citations) that the BPP coverage limits did not apply "as a matter of law," the contrary conclusion must be reached. Further, the court finds, as a matter of law, that Blues To You was not entitled to recover the "replacement cost" of damaged property unless it actually repaired or replaced those items.  *See Constr. Contrs. Emplr. Grp., LLC v. Fed. Ins. Co.*, 829 F.3d 449, 453 (6th Cir. 2016) ("Ohio state law dictates that interpretations of insurance contracts are questions of law for a court to answer.").  The relevant policy language provides (Plaintiff's Exhibit 1 at 70): "We will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced. . . ."  And this court stated as much in its order on Auto-Owners' motion in limine, which precluded Blues To You from arguing it was entitled to the replacement costs of items absent proof of replacement.  *See* ECF Doc. 105.  Blues To You's generic contention at trial that it "had a replacement cost policy," as Coduto and Feielin acknowledged, did not relieve Blues To You of the contractual requirement to actually replace or repair damaged property before Auto-Owners would be obligated to pay the difference between the ACV of the damaged items and the replacement costs for those items.  *See* ECF Doc. 155 at 105; ECF Doc. 156 at 45; ECF Doc. 158 at 89.  So, although Blues To You undisputedly had "a replacement cost policy," that fact alone did not entitle it to be paid replacement costs on damaged property until it fulfilled the condition precedent of replacing or repairing the items in question.  Consequently, the court's alleged failure to instruct the jury on how to apply the replacement cost provision of the insurance policies did not result in a plain error.

Thus, none of Auto-Owners' jury instruction-related arguments demonstrated that a plain error was made which prejudiced their case so significantly that a new trial is warranted on that basis.  *See Woodbridge*, 954 F.2d at 1237 ("While the jury instructions would have been clearer if the requested language had been included, the failure to include it was not clear error.").

### 4.    Jury Errors

What the parties' arguments highlight are two fundamental errors made by the jury in reaching their verdicts.  And these mistakes are central to Auto-Owners' argument that the verdict was "against the weight of the evidence and controlling law and agreements between the parties."  First, it is quite apparent that the jury erroneously concluded that the CGL coverage limits and not the BPP limits applied.  Second, the jury awarded damages based on insufficient evidence of the ACV values for damaged property.  Both parties' arguments regarding the coverage limits and ACV versus RCV payment obligations address these issues, although the two sides come to different conclusions.  Under Rule 59, when a manifest injustice has occurred the court cannot let a judgment stand.  *See* Fed. R. Civ. P. 59(d); *Shirvell v. Gordon*, 602 F. App'x 601, 607 (6th Cir. 2015) (holding that the court could order a new trial "if it is necessary to prevent manifest injustice"); *Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 249 (6th Cir. 1991) (holding that a district court may, on its own initiative, order a new trial to prevent a miscarriage of justice); *see also Max Rack, Inc. v. Core Health & Fitness, LLC, et al.*, 40 F.4th 454, 469 (6th Cir. 2022) ("The excessive nature of a monetary award may also justify a new trial (or at least a remittitur) if it shows that the verdict arose out of passion or mistake." (Internal citations omitted)).  As the parties have had notice of the issues and opportunities to be heard, the court will take up the question of whether these jury mistakes caused the type of errors that warrant a new trial.

21

Because the jury's compensatory damage award exceeded the applicable coverage limits, it did not put Blues To You in the same position it would have been in had no breach of contract occurred.  This was a clear legal error and manifest injustice.  *See Cumming Inc. v. BP Prods. N. Am.*, 648 F. Supp. 2d 969, 983-987 (M.D. Tenn. 2009) (finding that under Rule 59, the punitive damages award constituted a legal error requiring reduction).  Ohio law treats insurance policies the same way other contracts are treated when damages for breach of contract are sought.  Thus, compensatory damages are limited to what would "place the non-breaching party in as good a position as if the contract had been ***fully performed.***"  *See Ferndale Labs., Inc. v. Schwarz Pharma, Inc.*, 123 F. App'x 641, 649 (6th Cir. 2005) (internal quotation marks omitted) (emphasis in original); *see also Church Mut. Ins. Co. v. First United Pentecostal Church of Parma*, No. 1:11-CV-2201, 2012 U.S. Dist. LEXIS 117607, at *12 (N.D. Ohio Aug. 21, 2012) (noting that Ohio treats insurance policies as contracts).  Consequently, the coverage limits, as terms of the contract, set the maximum amount Auto-Owners could be required to pay if the jury found it had breached its contractual obligations to Blues To You.  *See Church Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 117607, at *12-14 (finding that the insurance company's indemnification obligation was limited to the coverage limits of the policy).

But the jury plainly did not apply the BPP coverage limits on the breach of contract claims, as its award was multiples larger than the limits of coverage for damage to property.  *See* ECF Doc. 147.  Because the jury's compensatory damage award was well over the policy limits, the jury's damage awards were against the weight of the evidence, one of the grounds argued by Auto-Owners.  As such, the jury's compensatory damage awards cannot stand.  *See Shirvell*, 602 F. App'x at 607.

22

The jury's error regarding the maximum compensatory damages that could be awarded for breach of contract was compounded by the jury's apparent, but erroneous, conclusion that sufficient evidence had been adduced to support the ACV of the items Blues To You claimed were damaged, resulting in compensatory damage verdicts that were against the weight of the evidence.  *See Mosby-Meachem*, 883 F.3d at 606.  Because Auto-Owners was only obligated to pay Blues To You for the ACV of damaged property, Blues To You was required to present ACV evidence for those items, in order to justify its compensatory damage award.  As explained in greater detail below, this it failed to do, resulting in the jury's compensatory damage verdicts being against the manifest weight of the evidence.  Because Blues To You failed to present clearly differentiated ACV amounts for the property it claimed was damaged in the 2019 and 2020 losses, a substantial portion of the compensatory damages it sought – and which the jury awarded – lacked a proper basis under the parties' contracts.  As a result, a new trial or remittitur must be ordered.  *See Mosby-Meachem,* 883 F.3d at 606.

As discussed above, Blues To You's simplistic adherence to its generic allegation that it should benefit from having a "replacement cost policy," without also offering evidence that it had complied with the conditions precedent to a right to recover replacement costs, unfortunately, resulted in a failure of its evidence.  Blues To You bore the burden of proof that the property for which it claimed a right to recover insurance benefits was covered under the applicable insurance contracts.  *See Motorists Mut. Ins. Co.*, 2022-Ohio-841, ¶ 9 (citing *Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 19).  And Blues To You was obligated to prove that it had met the obligations of the contract in order to receive payment for a loss.  Here, the contract required Blues To You to submit proof of ACV amounts for the losses claimed.  *See* Plaintiff's Exhibit 1 at 56, 78.  Reviewing the evidence presented at trial, however, Blues To You

23

apparently relied on the testimony of Robert McEaneney – that he had provided Auto-Owners with what he believed were the appropriate ACV values in the proof of loss forms.  *See* ECF Doc. 158 at 93.  But he also admitted that the quotes provided by ERS and Dubick, which he incorporated in the proof of loss forms, were replacement cost values.  *See* ECF Doc. 158 at 94, 97.  McEaneney explained, however, that ACV could be calculated by using a depreciation factor that would be automatically calculated by the Xactimate software.  ECF Doc. 158 at 202-203.  But the Xactimate reports in evidence plainly show that no depreciation was deducted from the quoted replacement costs.  *See* Plaintiff's Exhibits 5, 80.  And, when testifying regarding his Xactimate calculations, McEaneney never stated whether or how he accounted for depreciation on the loss items.  ECF Doc. 157 at 202-203.  Additionally, the quotes from Smylie One Heating & Cooling (Defense Exhibit P at 241) and Hardwood Restoration (Plaintiff's Exhibit 123) also reflected RCV amounts.  *See* ECF Doc. 156 at 222-223; ECF Doc. 157 at 77-78.  And these quotes, along with others that indicated they were for replacement cost values, were all directly incorporated into McEaneney's Xactimate reports for each loss, as identified in Table 1.  *Compare* Plaintiff's Exhibit 123 and Defense Exhibit P at 236-239, 241, 243-254, *with* Plaintiff's Exhibits 5, 80.

| TABLE 1: Quoted RCV Amounts in Xactimate Reports | | | | |
|---|---|---|---|---|
| **Quote** | **RCV Reference** | **Quote Amount** | **Xactimate Description** | **Xactimate Amount** |
| Dubick Fixture & Supply (Defense Exhibit P at 246-254) | McEaneney Testimony | $164,050.00 | "Dubick Fixture & Supply" (First Report); "Restaurant/Commercial kitchen equipment" (Second Report) | $164,050.00 |
| Hardwood Restoration (Plaintiff's Exhibit 123) | "Remove existing damaged flooring, resecure + prep subfloor" | $36,788.50 | Floor Covering – Wood (Bid Item) (Same in both reports) | $36,788.50 |

| Precision Construction Services (Defense Exhibit P) | "Repair the space to like new condition", "Install . . . to original new condition" | $80,000.00 | Precision Construction Services (2019 report only) | $80,000.00 |
|---|---|---|---|---|
| Smylie One (Defense Exhibit P at 241) | "New" Water Heater | $45,978.00 | Smylie One (Same in both reports) | $45,978.00 |
| Protegis Fire (Defense Exhibit P at 243-245) | "recharge" fire suppression system | $1,464.30 | Protegis (2019 report only) | $1,464.30 |
| The Tile Company, Inc. (Defense Exhibit P at 239) | "installation of new ceramic" | $25,000.00 | Kitchen and Men's Bathroom – Tile (Bid) (2019 Report only) | $25,000.00 (total) |

Based on the evidence reviewed above, there was insufficient evidence to support the jury's apparent conclusion that all of the values quoted by McEaneney in the proof of loss forms actually constituted ACV amounts. Accordingly, there was no basis under the insurance contracts to award compensatory damages using them. *See Mosby-Meachem*, 883 F.3d at 606.

This left the jury, on one hand, with McEaneney's *belief* that he presented accurate ACV values, and, on the other hand, the plain content of the Xactimate reports, which showed that undepreciated replacement costs were used for the items in Table 1. *See* Plaintiff's Exhibits 5, 80. And Blues To You presented no other evidence to explain the contradiction between McEaneney's belief and what the Xactimate reports indicated. *See* ECF Doc. 157 at 95-204; ECF Doc. 158 at 4-48, 107-109. The jury was entitled to assess the credibility of McEaneney's testimony; but even though the jury appears to have found McEaneney to be credible, his testimony does not withstand basic scrutiny.

The court in *Lewis v. United States*, No. 02-2958, 2014 U.S. Dist. LEXIS 204697, at *6-7 (W.D. Tenn. Aug. 18, 2014), dealt with a similar situation where a defendant challenged the jury's ability to rely on documentary evidence when a witness had testified the document was

inaccurate.  The court noted, "This argument asks the Court to weigh [the witness's] testimony against the other evidence presented and make a credibility determination about whether the [documentary evidence was] accurate.  This task was properly left to the jury and the Court declines to do it now."  *Id.*  The same is true here.  Auto-Owners argues that McEaneney's testimony that the Xactimate reports were sufficient statements of ACV valuations conflicted with the actual content of the Xactimate reports, which plainly showed multiple items listed at replacement cost value with no reductions for depreciation.  This court is in no better position to invade the province of the jury than was the court in *Lewis.*  It is reasonable to infer that the jury found McEaneney's testimony to be credible.  And to the extent McEaneney testified that his Xactimate reports contained evidence of ACV valuations, the jury could rely on it.  But Auto-Owners aptly points out that although McEaneney himself admitted that certain items in his Xactimate were un-depreciated replacement cost figures, the jury nevertheless appears to have accepted the "bottom line" in the Xactimate reports in arriving at its damage verdicts.

That does not mean Auto-Owners is entitled to judgment as a matter of law based on Blues To You's failure of proof.  That is because Auto-Owners failed to elicit admissions from McEaneney that the *other* portions of his Xactimate reports, in other words those portions directly derived from Xactimate's ability to estimate building material costs and the like, also reflected RCV amounts.  Those items appear to have been presented at actual cash values.  To the contrary, the court has no reason to believe those *other* item costs were anything but ACV amounts.  The court must respect the jury's determination that Auto-Owners breached its contracts with Blues To You, but the court is not required to accept the jury's damage calculations when there appears to have been a clear misapprehension of what was recoverable under the insurance contracts.

Likewise, the insufficiency of Blues To You's evidence reflecting the ACV amounts recoverable shows that the jury's misapprehension also impacted its compensatory damages award on the bad faith claims.  *See* ECF Doc. 147.  As a matter of law, Auto-Owners could only be liable for acting in bad faith *for failing to meet its contractual obligations* without reasonable justification.  *See Marsteller v. Sec. of Am. Life Ins. Co.*, No. 3:01-CV-7258, 2002 U.S. Dist. LEXIS 17560, at *17 (N.D. Ohio Sept. 12, 2002); *see also Barber v. Arch Ins. Co.*, 852 F. App'x 210, 216 (6th Cir. 2021) ("Without that obligation [to provide coverage], the bad faith claim must fail as a matter of law." (internal citations omitted and alterations in original)).  Because Auto-Owners had no obligation to pay for damages to property for which no ACV values were submitted, Auto-Owners' liability as to the compensatory damage award for the bad faith claims must be accordingly reduced.

This misapprehension also affected the jury's consequential damage awards, because Blues To You's consequential damage argument, as to both the breach of contract and bad faith claims, was based almost entirely on plaintiff's claim of a right to recover the replacement or repair costs of the damaged items.  *See* ECF Doc. 160 at 101-102.  The solution is not – as will be discussed below – to grant judgment as a matter of law to Auto-Owners, because to do so would require the court to reweigh the evidence and completely reject the jury's liability determination.  And the solution is not for this court to dissect the information in the Xactimate reports, compare it to the McEaneney testimony, and decide what was credible and what was not.  Rather, the solution is to GRANT Auto-Owners' motion for a new trial, *see* Fed. R. Civ. P. 59; *Fryman*, 936 F.2d at 249, or, in the alternative, to order a remittitur, which will be discussed below.

### III.    Renewed Motion for Judgment as a Matter of Law

#### A.    Arguments

Auto-Owners contends that it is entitled to judgment as a matter of law or, alternatively, that a new trial should be ordered.  First, it contends that the insurance coverage was voided as a matter of law because Blues To You made material misrepresentations during the claims adjustment process.  ECF Doc. 163 at 4-11, 12-13.  Also, Auto-Owners argues that Blues To You failed to establish: (1) that Auto-Owners acted in bad faith and with actual malice; (2) that it presented ACV values and was entitled to replacement costs; or (3) that it was entitled to the increased costs or consequential damages.  ECF Doc. 163 at 11-16.  Blues To You opposes the motion.  *See* ECF Doc. 175.

Auto-Owners' arguments regarding the ACV and RCV issue largely reiterates its argument from its motion for a new trial.  Because this court has addressed above those contentions under the more exacting standard for Rule 59 motions, they need not be addressed again.  *See*, *supra* fn. 1, *Hoback*, 2012 U.S. Dist. 124794, at *9.

#### B.    Legal Standard

Federal Rule of Civil Procedure 50(b) provides that if a court does not grant a motion for judgment as a matter of law made after the close of all the evidence and the party renews its request after a verdict is returned, the court may: (1) allow the judgment to stand, (2) order a new trial, or (3) direct entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b).  A judgment as a matter of law may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)).  In conducting this analysis, the

court must view the evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *See In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2006 U.S. Dist. LEXIS 75873, at *34-35 (N.D. Ohio Sept. 30, 2006) (internal citations omitted), *aff'd* 527 F.3d 517 (6th Cir. 2008). The court will not, however, weigh evidence or pass judgment on witnesses' credibility. *Id.* "When the evidence would permit reasonable minds to differ on the issue decided by the jury, a motion for judgment as a matter of law must be denied." *See id.* at *35.

When evaluating the sufficiency of the evidence, federal courts sitting in diversity apply a state-law standard of review in evaluating a Rule 50 motion. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 313 (6th Cir. 2011). Under Ohio law, the sufficiency of the evidence is a question of law reviewed *de novo*. *See Lawyers Title Co., LLC v. Kingdom Title Solutions, Inc.*, 592 F. App'x 345, 349 (6th Cir. 2014) (citing *Reeves v. Healy*, 192 Ohio App. 3d 769, 782 (Ohio 2011)). The grounds for granting a Rule 50(b) motion are limited. Because such a motion is the "renewal" of the pre-verdict motion, it may only be granted on the same grounds advanced in a pre-verdict motion. *Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 328 (6th Cir. 2017).

### C.   Analysis

#### 1.   Material Misrepresentations

Auto-Owners contends that Blues To You made material misrepresentations in its submissions to Auto-Owners and during the investigation of its claims, resulting in the insurance policies being void. ECF Doc. 163 at 4. It alleges that Blues To You made the following misrepresentations: (i) duplicating inclusion of loss items in its 2019 and 2020 proofs of loss, (ii) representing RCV amounts as ACV valuations, and (iii) claiming losses and property damage for items not covered under its policies. *See* ECF Doc. 163 at 4-13.

Blues To You opposes the motion and challenges the alleged misrepresentations, contending that Auto-Owners bore the burden to prove the misrepresentations, and particularly their intentionality, as an affirmative defense.  ECF Doc. 175 at 7-10.  In its reply brief, Auto-Owners largely reiterates its arguments, adding that the intent behind the statements could be inferred because the items were not damaged or were not covered.  *See* ECF Doc. 179.

For an insurer to void a policy based on a material misrepresentation clause, the insurer must show that there were material misstatements and that those misstatements were intentionally made to defraud the insurer.  *See Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 536-37 (6th Cir. 2014) (citing *Parker v. State Farm Fire & Cas. Co.*, No. C87-2683, 1988 U.S. Dist. LEXIS 19521 (N.D. Ohio Nov. 4, 1988)).  Ordinarily, the issue of whether misstatements were intentionally made is a question for the jury.  *See Parker*, 1988 U.S. Dist. LEXIS 19521, at *39.  A judgment as a matter of law on the issue is proper, however, "if there is insufficient evidence presented to raise a controverted issue of fact for the jury."  *Id.*

Auto-Owners has not shown an uncontroverted or insufficiently supported controverted fact that the challenged statements of Blues To You were made with the intent to defraud Auto-Owners.  *See* Fed. R. Civ. P. 50(b); *Imwalle*, 515 F.3d at 543.  Blues To You does not contest whether the alleged misrepresentations were material, nor should it as a reasonable insurance company would find the alleged misstatements important.  *See Rose*, 766 F.3d at 537 (recognizing that, under Ohio law, a misrepresentation is material if a reasonable insurance company would attach importance to the misrepresented fact in determining its course of action).  But, based on the evidence presented, a reasonable jury could conclude that any misstatements by Blues To You were inadvertent, unintentional, or not made with the intent to defraud; as such,

judgment as a matter of law cannot be granted on this issue.  *Imwalle*, 515 F.3d at 543; *Lawyers Title Co., LLC*, 592 F. App'x at 349.

To prevail, Auto-Owners needed to show that McEaneney and/or Miller made misstatements to Auto-Owners on behalf of Blues To You with the intent to deceive it, but its contentions in this regard fail.  Auto-Owners argues that reasonable minds could not differ over whether McEaneney submitted duplicate claims in the proofs of loss on behalf of Blues To You.  And Auto-Owners argues that Blue To You's fraudulent intent can be inferred from the fact that the items were never repaired or replaced.  *See* ECF Doc. 163 at 6-9; ECF Doc. 179.  But this misses the real heart of the issue – whether McEaneney made duplicate loss claims with the intent to deceive Auto-Owners.  *See Rose*, 766 F.3d at 536-37.  At trial, McEaneney explained that he discussed the claims with Auto-Owners' agent, Michael Coduto, suggesting that they combine the claims into one, and he never received an answer.  *See* ECF Doc. 158 at 7-9.  He went through both Xactimate reports and explained why he added damages to certain areas or items in both.  *See* ECF Doc. 158 at 22-34.  Further, he explained that he believed the proofs of loss were proper, properly conveyed the ACV amounts, and were consistent with the policies' coverages.  *See* ECF Doc. 157 at 111-113, 118-126, 131; ECF Doc. 158 at 93-98.  Auto-Owners also takes issue with Blues To You's failure to explain why depreciation was not accounted for in the Xactimate calculations.  ECF Doc. 179 at 3-5.  But the absence of such information relates back to the jury's weighing of the evidence and the credibility of Blues To You's witnesses.  *See Scrap Metal Antitrust Litig.*, 2006 U.S. Dist. LEXIS 75873, at *34-35.  Assuming the jury found McEaneney credible (as the court must in assessing a Rule 50 motion), a reasonable jury could have found this testimony sufficient to demonstrate that any misstatements as to the ACV and

duplication were not intended to deceive Auto-Owners but instead designed to bring both claims to a joint conclusion.

Auto-Owners' last alleged misrepresentation – the making of a claim for losses "covered" by another insurance company – is a more perplexing argument.  It contends that because Miller and McEaneney were aware of individuals at the bar working on behalf of Cincinnati Insurance that the "Plaintiff *knew* that the damage done from the second loss event was being covered by Cincinnati." ECF Doc. 163 at 10 (emphasis added).  This line of reasoning travels a bridge too far.  Although a construction company, hired by someone else, coming into *Wilbert's* could reasonably lead to questions as to what that third party was planning on doing (and paying for), it does not logically follow that those items were within the scope of what the other insurer considered to be covered.  Further, as was addressed in the pre-trial motions in limine, at trial, and above, Auto-Owners never presented the actual Cincinnati Insurance policy that was issued to the building owner, without which the best evidence rule prohibits the introduction of the policy's specific terms.  *See DeMarco v. Ohio Decorative Prods.*, No. 92-2294, 1994 U.S. App. LEXIS 3848, at *27-28 (6th Cir. 1994) (unreported) (noting that the best evidence rule was implicated by a claim's dependence on the content of a written document).  Moreover, McEaneney testified that it was his understanding that the bar was responsible for "structure" or "everything down to the framing," and that he had tried to figure out what other insurance company might be responsible to pay for and he believed that Cincinnati Insurance insured the tenant above *Wilbert's*.  *See* ECF Doc. 158 at 65, 69-73, 87-88, 91-92.  But these acknowledgments do not prove that McEaneney acted deceptively in making loss claims.  The fact that Auto-Owners appears to have assumed that it could discuss at trial the terms of the Cincinnati Insurance policy – *without ever producing the policy* – is an error it will have to live

with.  Because the issue of whether Blues To You's statements were made with intent to deceive Auto-Owners was a question properly before the jury; and because a reasonable jury could rely on McEaneney's statements as to his perception of the validity of what he presented, Auto-Owners is not entitled to judgment as a matter of law on this ground.[4]  *See Parker*, 1988 U.S. Dist. LEXIS 19521, at *39.

### 2.  Sufficiency of Bad Faith and Actual Malice Evidence

Auto-Owners contends that Blues To You failed to present any credible evidence as to bad faith and actual malice.  ECF Doc. 163 at 11, 15-16.  It argues that the resolution of the claims hinged on "differences of opinion" that were insufficient to support a bad faith claim or punitive damages award.  *See* ECF Doc. 163 at 11, 15-16.  Blues To You opposes the motion, citing a litany of instances upon which it contends Auto-Owners' conduct was not reasonably justified and argues that it provided ample evidence demonstrating Auto-Owners' conscious disregard for Blues To You's claims.  ECF Doc. 175 at 8-10, 17-24.

Under Ohio law, "[a]n insurance provider acts in bad faith when 'its refusal to pay the claim is not predicate upon circumstances that furnish reasonable justification therefor.'" *Hastings Mut. Ins. Co. v. Mengel Dairy Farms, LLC*, 461 F. Supp. 3d 655, 665 (N.D. Ohio May 19, 2020) (quoting *Zoppo*, 71 Ohio St. 3d at 554)).  Intent is not an element of that standard.  *Id.* "A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner."  *Horak v. Nationwide Ins. Co.*, 2007-Ohio-3744, at ¶83 (9th Dist. July 25, 2007).

After a plaintiff establishes that an insurer breached its duty of good faith in refusing to pay a claim, he may be able to recover punitive damages upon a showing that the refusal to pay

---

[4] The court is unaware of any pre-suit notice by Auto-Owners that either the 2019 or 2020 policies had been voided by the conduct of Blues To You about which Auto-Owners now complains.

the claim was done in "conscious disregard" for the insured's rights. *See Zoppo*, 71 Ohio St. 3d at 557-558. Punitive damage awards must be supported by clear and convincing evidence. *See* Ohio Rev. Code § 2315.21(D)(4). In the insurance context, such damages are warranted "only upon a showing of actual malice." *Winters Enters., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2021 U.S. Dist. LEXIS 175079, at *40 (S.D. Ohio Sept. 15, 2021) (internal quotation marks omitted). Actual malice exists when the defendant acts with "ill will, hatred or spirit of revenge" or performs such "reckless, wanton, wilful [sic] and gross acts" that malice can be inferred from the conduct and surrounding circumstances. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 277 (1983). A plaintiff may show "actual malice" by showing that the insurer acted with "a conscious disregard for the rights and safety of others that had a great probability of causing substantial harm." *Bigler v. Pers. Serv. Ins. Co.*, 2014-Ohio-1467, at ¶166 (7th Dist. Ct. App.) (citing *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473 (1991)). The Ohio Supreme Court has upheld a finding that an insurer acted with "conscious disregard" when the insurer breached "its affirmative duty to conduct an adequate investigation" by conducting "a one-sided inquiry" that failed to adequately review or develop evidence concerning the claim. *Bell v. Zurich Am. Ins. Co.*, 156 F. Supp. 3d 884, 891 (N.D. Ohio 2015).

As an initial matter, in its Rule 50(a) motion, Auto-Owners contended that Blues To You failed to prove bad faith solely because it did not present any expert testimony on the issue. *See* ECF Doc. 158 at 194-195[5]; ECF Doc. 159 at 179-185. Because Auto-Owners did not rely on the "difference of opinion" ground in its Rule 50(a) motion, the court cannot now consider it in Auto-Owners' Rule 50(b) motion. *See Kay*, 709 F. App'x at 328; *Umfress v. City of Memphis*, No. 20-6115, 2021 U.S. App. LEXIS 20367, at *6 (6th Cir. 2021) (unreported) ("The key

---

[5] Auto-Owners also moved for judgment as a matter of law on the bad faith claim on this same basis at the end of Blues To You's case-in-chief.

question [regarding preservation] is whether the basic legal theory that a party relies on in the renewed motion is discernible *from the original motion*." (emphasis added)).  Accordingly, a portion of Auto-Owners' argument on Blues To You's bad faith claims is forfeited.  *See Umfress*, 2021 U.S. App. LEXIS 20367, at *6-8.

But even assuming it had been preserved, Auto-Owners' claim would fail.  *See* Fed. R. Civ. P. 50(b); *Imwalle*, 515 F.3d at 543.  As noted in *Horak*, support for a bad-faith claim can stem from the insurer's unjustified delay in handling the claim, regardless of whether the claim was ultimately paid.  *Id.* at ¶83.  Some circumstances in this case point towards good faith on Auto-Owners' part, such as adjuster Michael Coduto's quick response to the claim and the partial payment provided to Blues To You.  *See Horak*, 2007-Ohio-3744, at ¶84 (finding no evidence of bad faith when the insurance company arrived the day after the loss to begin its investigation and provided funds in advance for the damaged contents); ECF Doc. 156 at 36, 42, 157-162.  However, Blues To You also presented evidence that Auto-Owners did not: (i) formally accept or deny coverage of the first loss, (ECF Doc. 156 at 78-80); (ii) inform Blues To You of its decision regarding the second loss after indicating it was investigating the claim, (ECF Doc. 155 at 113-114; ECF Doc. 156 at 78-80); (iii) hire an engineer to inspect the premises until April 2020, seven months after the September 2019 loss, (ECF Doc. 155 at 98; ECF Doc. 156 at 78-80); (iv) have Coduto timely respond to McEaneney's communications, (*See* ECF Doc. 156 at 83-86, 107-109); and (v) truthfully represent why it was delayed in resolving the second claim, based on Feielin indicating in November 2020 it was awaiting a report from Coduto even though Coduto acknowledged he was not aware of the proof of loss until later (*see* ECF Doc. 156 at 120; ECF Doc. 160 at 89; Plaintiff's Exhibit 85 at 2).

Moreover, Auto-Owners did not provide any justification for why the delays occurred. Coduto never explained why he delayed in responding to McEaneney or why he didn't hire kitchen equipment expert Anthony Yurko sooner, noting only that there was a delay from McEaneney in providing the first proof of loss. *See* ECF Doc. 156 at 83-86, 101, 106-109, 150, 168-173. Feielin had no explanation for why Coduto had the first proof of loss in February 2020 but did not submit a report until April 2020 and never explained why an update on Auto-Owners' investigation into Blues To You's second claim was not timely sent. *See* ECF Doc. 155 at 116-134; ECF Doc. 156 at 21-30. Based on this evidence, a reasonable jury could find that Blues To You presented sufficient evidence that Auto-Owners' conduct was unreasonable, arbitrary, or capricious. *See Imwalle*, 515 F.3d at 543; *Horak*, 2007-Ohio-3744, at ¶83. And a reasonable jury also could have rejected those findings. As a result, evidence supports both sides; and judgment as a matter of law on that issue would be improper. *See Scrap Metal Antitrust Litig.*, 2006 U.S. Dist. LEXIS 75873, at *34-35.

A related issue is whether the evidence rose to a level sufficient to prove the "actual malice" required for a punitive damages award. Although a closer question, because the court must give deference to the jury's factual findings, Auto-Owners likewise has failed to show that no reasonable jury could have found that it acted with conscious disregard. *See* Fed. R. Civ. P. 50(b); *Imwalle*, 515 F.3d at 543. First, Auto-Owners contends that Blues To You was required to show damages specifically stemming from its actual malice in order to be awarded punitive damages. ECF Doc. 163 at 15-16. This is an incorrect statement of law. *See Reiger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 518 (2019); *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 649-651 (1994) ("The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct. Therefore, it would make no sense for this court to establish a

rule requiring that malicious conduct giving rise to a claim for punitive damages must independently cause compensable harm before punitive damages may be awarded."), *superseded on other grounds by statute*, Ohio Rev. Code § 2317.02(A)(2).

As to actual malice, unhelpfully, Auto-Owners has not raised any specific contentions that its conduct was not a "conscious disregard" or that there was no "great probability of substantial harm"; rather, it makes only cursory assertions that Blues To You failed to show actual malice. *See* ECF Doc. 163 at 15-16. But the standard for "actual malice" is high, generally focusing on the person's intent or state of mind having some "hatred, ill will, or spirit of revenge." *See Staff Builders v. Armstrong*, 37 Ohio St. 3d 298, 304 (1988). As an insurer, merely questioning whether one is obligated to pay on a claim cannot be "actual malice" because the validity of the claim is a prerequisite for punitive damages. *See Thomas v. Allstate Ins. Co.*, No. 58391, 1990 Ohio App. LEXIS 2128, at *11 (Ct. App. May 31, 1990); *see also Hastings Mut. Ins. Co. v. Clyne*, 87 Ohio App 3d 198 (4th Dist. Ct. App. 1993) (holding that an insurer did not act in bad faith when the insured was not entitled to coverage). And for the refusal to pay to be a basis for actual malice, it must be both unjustified and in bad faith. *See Helmick v. Republic-Franklin Ins. Co.*, 39 Ohio St. 3d 71, 75 (1988).

As to the sufficiency of proof to support punitive damages, there was evidence on both sides of the issue. Blues To You submitted proofs of loss that relied on and cited the wrong coverage limits. *See* Plaintiff's Exhibits 4, 13. Because of those flawed claims, a reasonable jury could have found that Auto-Owners would question the actual scope of its obligation to pay Blues To You's claims. Further, Blues To You did not provide its proof of loss until February 2020 for the 2019 loss, and what it did submit had ACV amounts that were concerningly similar to the RCV amounts indicated on the same proof of loss. *See* ECF Doc. 156 at 74; Plaintiff's

Exhibit 4, 13.  This is not to say that these constituted legal misrepresentations, but merely that some delay in the processing of the claim would have been reasonable given the amount of money claimed and the insurer's right to not pay more than the limits of coverage on the policy.

On the other hand, Blues To You also submitted evidence that Auto-Owners: (i) did not timely respond to communications from Miller or McEaneney; (ii) did not hire an expert until much later than it might have; and (iii) knew from McEaneney that Miller was "desperate," needed to reopen, and that his "biggest day" of the year was going to be the Cleveland Indians' opening day, March 26, 2020.  *See* Plaintiff's Exhibits 63, 65; Defense Exhibit F.  Moreover, Auto-Owners did not timely indicate its acceptance/rejection/or continuing investigation not just on Blues To You's 2019 claim, but on its 2020 claim as well.  As Blues To You elicited through the cross-examination of Coduto, during one of the periods in which Blues To You did not hear from Auto-Owners, Coduto's notes indicated he'd had nine calls with Cincinnati Insurance from the date of the 2020 loss and December 19, 2020.  *See* ECF Doc. 156 at 120.  Further, Auto-Owners partially paid for the first claim and stipulated that both losses were covered under the policies.  *See* ECF Doc. 160 at 133; Defense Exhibits AA, BB.  Because of this stipulation, Auto-Owners needed to show that the insurance claim was invalid, but it decided to argue the entire policies were void due to alleged material misrepresentations; the jury rejected the material misrepresentation claims entirely.  Thus, the court finds that Blues To You presented sufficient evidence from which a reasonable jury could find that Auto-Owners acted with actual malice.  *See Thomas*, 1990 Ohio App. LEXIS 2128, at *11.

Likewise, from the evidence submitted, a reasonable jury could have concluded that Auto-Owners' conduct demonstrated a conscious disregard for Blues To You.  Given the evidence discussed above, a reasonable jury could infer that Auto-Owners was not only aware of

Blues To You's situation as a business, but also consciously delayed in acting on the claim, despite knowing it could cause substantial harm, as delays in reopening could reasonably be foreseen to lead to lost income for Blues To You.  *See Bigler*, 2014-Ohio-1467, at ¶170 ("The presence of actual malice need not be expressed by may be inferred from conduct and circumstances."); *Bell*, 156 F. Supp. 3d at 891 ("[Conscious disregard] requires the party to possess knowledge of the harm that might be caused by his behavior.").

Although rational jurors could have disagreed on whether Auto-Owners' conduct constituted a conscious disregard for Blues To You's interests, it was the jury's duty to weigh the evidence.  *See Scrap Metal Antitrust Litig.*, 2006 U.S. Dist. LEXIS 75873, at *34-35.  Because sufficient evidence existed for a rational juror to find that Auto-Owners acted with actual malice, Auto-Owners cannot be granted judgment as a matter of law on the bad faith claim or the punitive damages award.

### 3.        Liability for Increased Costs[6]

Auto-Owners contends that because Blues To You did not provide the ACV amounts for its claims and did not repair or replace anything, as required for Auto-Owners to be obligated to pay the RCV, Blues To You was not entitled to any consequential damages.  *See* ECF Doc. 163 at 14-15.  Blues To You contends that because of Auto-Owners' bad faith, it was entitled to "extra-contractual" damages, which went beyond the contractual damages and arose specifically

---

[6] Auto-Owners merges two distinct contentions in its one-page argument regarding the damage award for "increased costs."  *See* ECF Doc. 163 at 14-15.  First, it contends that the jury should have been instructed that it may not award damages for increased costs because actual replacement or repair of an item was a prerequisite to receiving payment on a replacement cost basis.  Auto-Owners also raised this argument in its motion for a new trial, as discussed above.  Because it was ultimately unsuccessful in that motion, it is likewise unsuccessfully under the standards for Rule 50(b).  *See Hoback*, 2012 U.S. Dist. 124794, at *9.  Second, Auto-Owners argues that Blues To You failed to present ACV amounts for its claims; because this was not previously raised, it will be addressed under this section.  *See* ECF Doc. 163 at 14-15.

from Auto-Owners' alleged bad faith.  ECF Doc. 175 at 17-22.  In its reply brief, Auto-Owners reiterates its argument.  *See* ECF Doc. 179 at 5-6.

As an initial matter, Auto-Owners only referred to *consequential damages* in its briefing, offering no challenge to the *extra-contractual damages* awarded for the bad faith claims.  *See* ECF Doc. 163; ECF Doc. 175.  Accordingly, the court will treat its argument as only contesting the consequential damages awarded for the breach of contract claims and any argument as to extra-contractual damages on the bad faith claims is waived.  *See Brenay v. Schartow*, 709 F. App'x 331, 336-37 (6th Cir. 2017) (noting that a party's failure to develop an argument, raising it in only a perfunctory manner, or making only conclusory assertions in support renders the argument waived).  Likewise, Blues To You's argument does not address consequential damages and only discusses extra-contractual damages permitted in Ohio for bad faith claims; thus, Blues To You has waived any argument on consequential damages.  *Id.*

Auto-Owners has not shown that Blues To You was not entitled to *any* consequential damages as a matter of law.  *See Imwalle*, 515 F.3d at 543.  As discussed above in relation to the sufficiency of Blues To You's evidence of ACV amounts presented to the jury, based on the role of McEaneney's testimony and the general repair numbers referenced in his Xactimate reports, Blues To You presented some evidence in support of its damages.  Similarly, however, those damages must be considered in relation to Auto-Owners' motion for remittitur, as Blues To You contended that the increased price of the various quotes (for which there was only RCV amounts presented) constituted consequential damages.

To the extent Auto-Owners contends Blues To You is not entitled to *any* consequential damages because it never replaced anything as required to receive the RCV amount, its argument fails.  As noted above, the jury was provided some evidence from which it could reasonably

40

determine an ACV amount for the items McEaneney testified to and which were not directly contradicted by third-party quotes.  Although as a matter of law, Auto-Owners is correct that actual replacement was required for it to be obligated to pay the RCV amount, as to the amounts supported by McEaneney's testimony, consequential damages for the increased cost of the items supported by McEaneney's testimony would be valid.  What, if any, remittitur this distinction requires will be address below with Auto-Owners' motion for remittitur.

## IV.     Motion for Remittitur

### A.     Arguments

Auto-Owners contends that the compensatory damages awarded should be reduced (i) by any duplicated damages claimed in the 2019 and 2020 proofs of loss; (ii) by any amount covered by the building owners' insurance; (iii) by any amounts paid by *or* offered to be paid by Auto-Owners; and (iv) to the policies' limits for personal property damages.  *See* ECF Doc. 165.

Blues To You opposes any remittitur, again contending that the CGL coverage provided the applicable coverage limits.  *See* ECF Doc. 172 at 1-9.  It also argues that (i) the building owners' insurance coverage was irrelevant because Auto-Owners failed to present any evidence of what the third-party insurance would cover, (ii) Auto-Owners has not presented any legal basis for reducing damages based on its earlier offers to resolve the insurance claims, which were never paid to Blues To You; and (iii) there was no evidence that the jury considered duplicative items in their damage award.  ECF Doc. 172 at 9-12.

In its reply brief, Auto-Owners contends that, at best, Blues To You could argue for coverage under the CGL provision as to the 2019 loss, but not the 2020 loss because that loss was not caused by an employee.  *See* ECF Doc. 178 at 1-2.  As to the 2019 loss, it contends that the CGL provision did not apply because the liability claim that *was* covered was resolved in a

separate claim.  ECF Doc. 178 at 2-3.  As to the 2020 loss, it contends that all of the structural repairs would be covered by Cincinnati Insurance and, thus, should not have been considered or awarded.  ECF Doc. 178 at 5-6.  Further, Auto-Owners contends that there should be no business interruption coverage for the second loss.  *See* ECF Doc. 178 at 2-3.

### B.    Legal Standard

"[A] jury verdict should not be remitted by a court 'unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss.'"  *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 443 (6th Cir. 2000) (quoting *Jackson v. City of Cookeville,* 31 F.3d 1354, 1358 (6th Cir. 1984)).  The court may reduce the award only if it is "(1) beyond the range supportable by proof, (2) so excessive as to shock the conscience, or (3) the result of a mistake."  *Slayton v. Ohio Dep't of Youth Servs.,* 206 F.3d 669, 679 (6th Cir. 2000) (citing *Bickel v. Korean Air Lines Co., Ltd.,* 96 F.3d 151, 156 (6th Cir. 1996)).  Only when an award is "grossly disproportionate" to the evidence presented may an award be remitted; extreme generosity is insufficient.  *Koster v. Trans World Airlines, Inc.,* 181 F.3d 24, 34 (1st Cir. 1999). In making its determination, the court must view the evidence in a light most favorable to the prevailing party.  *Jackson,* 31 F.3d at 1359.

### C.    Auto-Owners' Grounds for Remittitur

Remittitur is warranted in this action based on the policy limits, potential duplicative damages, and insufficient evidence of ACV amounts, but not on Auto-Owners' remaining grounds.  First, as to business interruption insurance, Auto-Owners raised the argument for the first time in its reply brief and, thus, the court will not consider it.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("We have found issues to be waived when they are raised for the first time in . . . replies to responses.").

42

Second, remittitur is not warranted based on Cincinnati Insurance's alleged coverage because, as discussed above, the scope of that coverage was (i) a factual matter for the jury, and (ii) the policy's precise terms were never provided.  Further, Auto-Owners has not presented any legal support for its contention that the damage awards may be reduced by the amount it offered to pay in settlement to Blues To You, particularly as the jury was not permitted to hear such evidence by application of Federal Rule of Evidence 408.  *See* Fed. R. Evid. 408 ("Evidence of the following is not admissible – on behalf of any party – either to prove to disprove the validity or amount of a disputed claim . . . (2) conduct or a statement made during compromise negotiations about the claim.").  Rule 408 is limited to prohibiting such evidence as proof of liability, but that is precisely what Auto-Owners' reasoning implies.  By reducing the damages award by the amount offered, it would be as if the jury found Auto-Owners' not liable for that portion of the damages.  Moreover, Auto-Owners *did not pay* and Blues To You *did not receive* any benefit from Auto-Owners' offer to pay a further portion of the loss; Auto-Owners is not entitled to an effective set-off for what it *did not pay*.

As to duplicate claims and amounts paid by Auto-Owners and cashed by Blues To You, Auto-Owners is entitled to have those amount remitted from the general compensatory damages award, as their inclusion would overcompensate Blues To You under its insurance contracts.  *See Ferndale Labs., Inc.*, 123 F. App'x at 649.  Because the general compensatory damages must be recalculated, these issues will be considered when reaching the new damages calculation.

Further, the jury's compensatory damage award must be reduced to the policy limits for BPP coverage, as discussed above.  The insurance contracts between Blues To You and Auto-Owners provided for $107,410 and $110,100 in coverage limits for the BPP coverage in 2019 and 2020, respectively.  *See* Plaintiff's Exhibits 1 at 7, 2 at 3.  This is in contrast to the

43

$300,000 CGL coverage limits for 2019 and 2020.  *See* Plaintiff's Exhibits 1 at 8, 2 at 4.  As discussed above, it appears, based on the jury's compensatory damage awards, that the jury misapprehended which coverage form applied to the losses Blues To You claimed.

Blues To You contends that both awards are justified based on the CGL policy limits and Auto-Owners' delay in processing the claims.  ECF Doc. 172 at 4-5.  However, as discussed above, Blues To You failed to appreciate the distinction between consequential damages arising from contractual claims and the "extra-contractual" damages Ohio permits under tort law.  Such ignorance could be excused had Blues To You mistakenly relied on some long-forgotten case law.  However, Blues To You has never identified a single case that supports this contention; neither in its references to the theory in its post-trial motions[7] (*see* ECF Doc. 172 at 6-9; ECF Doc. 173 at 12), nor in presenting the issue to the court during the charging conference (ECF Doc. 160 at 40-46).  Rather, Blues To You's contention arises from a fundamental misunderstanding of the nature of CGL coverage and landlord/tenant obligation, as discussed above.  Because the compensatory damages in this action are limited to the BPP coverage to which Blues To You was entitled under the insurance contracts, the compensatory damages (and consequential damages to the extent they were similarly impacted) must be reevaluated based on the evidence and the BPP coverage limits.  *See* ECF Doc. 160 at 101-102.

## D.  ACV-Based Remittitur for Compensatory Damages

As indicated above in the discussion of Auto-Owners' motion for a new trial, Blues To You failed to provide the ACV amounts for some parts of its requested damages.  However, the

---

[7] Before Blues To You points to its lone citation in the section generally addressing Auto-Owners' contention, it's worth noting that the citation is (i) a general citation to a case without a pin cite, and (ii) the case has *nothing* to do with the applicability of CGL coverage in a situation like ours.  Rather, Blues To You attempts to argue that because the manner in which the jury reached their compensatory damages was outlined in a special verdict, the award cannot be altered.  This, however, ignores the fact that such would be true, only if the amount were supported as a matter of law.  It is not.

credibility of the Xactimate reports, in relation to line items independently supported by McEaneney's testimony, must still be included, as the accuracy of the Xactimate report in those aspects was a factual issue resolved by the jury.

As a result, this court has reviewed the Xactimate reports and created a new "report," consisting of the three tables below, reflective of those portions of the 2019 and 2020 Xactimate reports that had evidentiary support.  In doing so, the court has excluded line items that reflected un-depreciated RCV (non-ACV) quotes from subcontractors and duplicated line items, such as painting rooms.  Specifically, the court finds the following line items in the 2019 report to be duplicative or unsupported:

| TABLE 2: Duplicated or Unsupported Damage Items | |
|---|---|
| Description | Cost (From 2019 Report) |
| Bar Area | |
| Seal/Prime then paint the walls and ceiling | $6,254.15 |
| "Floor Covering" that aligned with Hardwood Restoration's bid | $45,232.20 |
| Action Door's quote and labor | $596.29 |
| Men's Bathroom | |
| The Tile Company quote and labor | $13,524.72 |
| Kitchen | |
| Dubick Quote and labor | $206,309.28 |
| Precision Construction Services quote and labor | $101,760.00 |
| The Tile Company quote and labor | $17,213.28 |
| Mechanism Room | |
| Smylie One quote and labor | $56,530.88 |
| Temporary Repairs Sprinkler System | |
| Action Door quote | $484.98 |
| Protegis quote | $1,464.30 |

Additionally, for the 2019 loss, Blues To You made a claim for the damage to its electronics under the specialized endorsement.  *See* Plaintiff's Exhibit 4.  However, in the 2020 report, Blues To You including the items in its Xactimate report.  *See* Plaintiff's Exhibit 80.  Because Blues To You had a specialized endorsement for electronics, the amounts submitted with the 2020 Xactimate report will be excluded.  Further, because it was undisputed that no

work took place between the 2019 and 2020 losses, all duplicated entries have been excluded

from the 2019 loss and included in the 2020 loss.  For example, although the 2019 Xactimate

report included costs for sealing, priming, and painting the walls and ceilings, the 2020

Xactimate report specified that painting with a stain blocker was needed as well.  The court finds

the following breakdown of supported compensatory damages from the Xactimate reports:

| TABLE 3: 2019 Loss | |
|---|---|
| Room | Cost |
| Bar Area | $2,661.01 |
| Hallway | $3,143.27 |
| Back Hall | $1,192.27 |
| Office | $1,394.00 |
| Women's Bathroom | $1,580.82 |
| Men's Bathroom | $764.79 |
| Kitchen | $0 |
| Mechanism Room | $0 |
| Misc. Temporary Repairs to the Sprinkler System | $5,125.51 |
| TOTAL | $15,861.67 |

| TABLE 4: 2020 Loss | |
|---|---|
| Room | Cost |
| Bar Area | $51,526.47 |
| Storeroom | $2,124.26 |
| Bar Dining Area | $13,501.92 |
| Kitchen | $4,671.15 |
| Misc. Temporary Repairs to the Sprinkler System | $13,548.37 |
| TOTAL | $85,372.17 |

*See* Plaintiff's Exhibits 5, 80.  Accordingly, Blues To You was able to prove by a preponderance

of evidence that, as it relates to those general compensatory damages requiring an ACV-based

valuation, it suffered the damages as outlined in Table 3 and Table 4 above.  These will be

referred to as the "Xactimate Repairs" in the court's calculation of the overall general

compensatory award for purposes of determining the remittitur.

### E.      Consequential Damages

The issue of how to deal with (i) Blues To You's legal misunderstandings, (ii) its failure to present adequate evidence of ACV amounts. and (iii) the impact they may have had on the jury's consequential damages award is a difficult one to parse.  Neither party requested special interrogatories related to the consequential damages awarded.  *See* ECF Doc. 72, ECF Doc. 95, ECF Doc. 123; ECF Doc. 160 at 39-75.  But, as the court's analysis shows, a number of the quotes Blues To You presented lacked the necessary evidentiary support to be included in the damages calculation.  However, the jury heard not only about the increased costs to purchase replacement items, but also that Miller had rented a storage unit to store items from the bar, had attempted to partially reopen the bar following the first loss, and incurred costs to maintain the utilities for the space.  *See* ECF Doc. 158 at 129-130, 142, 146.

Thus, Blues To You presented some evidence on which the jury could properly base its consequential damages award.  Because there were no interrogatories requiring the jury to items its consequential damages findings, the jury's consequential damage verdict was analogous to a general verdict.  *See Watts v. UPS*, 378 F. App'x 520, 535 (6th Cir. 2010) (noting that a general verdict reflects the jury's finding in favor of one party over another and does not resolve specific fact questions).  Because the multiple grounds upon which the jury could have awarded consequential damages cannot be parsed, the court cannot assume that the consequential damages award rested only on the increased costs stemming from the unsupported "ACV" amounts.  Accordingly, the jury's consequential damages award must remain intact.  *See Black v. Ryder/P.I.E. Nationwide*, 15 F.3d 573, 581-582 (6th Cir. 1994) (holding that a district court clearly erred in finding that specific mental distress damages were duplicative of the general verdict rendered in a related claim because the jury had been instructed on multiple bases for

awarding damages and the court had not explained why it concluded the other grounds were not relied on).

### F.      New Damages Calculation

In addition to the above Xactimate Repairs, Blues To You contends that it was entitled to compensatory damages under its insurance policies' endorsements for its electronic equipment, food spoilage, and business interruption coverage.[8]  *See* Plaintiff's Exhibits 1, 2, 5, 80. However, because Blues To You based its electronics claim on the quoted replacement costs for the equipment, that quote cannot be used to support its damages claim, for the same reasons discussed above in regard to Auto-Owners' new trial motion.  Both Roth Cleaning Service invoices (totaling $48,735.11) and Action Door's invoice for repairing a door were also agreed upon by communications from Coduto.  *See* Defense Exhibit D at 59-60, 162-163.  Specifically as to Roth, the evidence also supported that Miller paid them for the agreed upon $13,659.43 invoice and $10,000 (*see* ECF Doc. 158 at 141-142; Defense Exhibit D), leaving an outstanding balance of $25,075.68.  The parties also largely agreed that Blues To You suffered over $8,000 in food losses, even with a dispute over several receipts for items purchased after the loss and an undated receipt for a multi-flow dispenser purchase.  *See* Defense Exhibit I.  Because a reasonable jury could have found the undated receipt was for an item purchased pre-loss, it has been included in the court's calculation, while claims for the items purchased after the loss have been excluded.  This results in a total food loss of $9,579.73.

---

[8] Blues To You also included a claim for "liability" in its first proof of loss.  *See* Plaintiff's Exhibit 4. This was acknowledged to be based on the damage done to the garage of the building the bar was in and resolved in a separate claim by the building's owners against Auto-Owners.  *See* ECF Doc. 156 at 58; ECF Doc. 159 at 163.  Accordingly, Blues To You did not need to claim that money on the building owner's behalf and it will not be included in the compensatory damages calculation.

As to the business interruption insurance, they jury heard conflicting witness testimony – from Shannon Cain and McEaneney – on how much business interruption damage occurred as a result of the 2019 fire.  *See* ECF Doc. 157 at 45-59, 203.  Additionally, Blues To You presented its tax records, indicating it had annual revenues over $450,000.  *See* Plaintiff's Exhibits 117, 118, 119, 120, 121.  On this evidence, the jury could have reasonably found that Blues To You had suffered a business interruption loss from the 2019 fire up to the $50,000 limit of coverage.  And because the jury's award exceeded the combined limits of the CGL coverage, the business interruption endorsement, and other applicable endorsements, it is reasonable to infer that the jury found that Blues To You should be awarded the limits of its business interruption coverage.  *See* Plaintiff's Exhibit 1.  Because the business interruption and refrigerated food coverage were not part of the BPP coverage, but were separate endorsements, those sums must be included in the losses for which Blues To You was entitled to recover.  *See* Plaintiff's Exhibit 1.  Thus, the court's calculation of what Auto-Owners must pay on the 2019 loss is as follows:

| TABLE 5: 2019 Loss Before Deductions and Set Offs | |
|---|---|
| Xactimate Repairs | $15,861.67 |
| Roth Cleaning Service | $25,075.68 |
| Action Door | $484.98 |
| Food Loss | $9,579.73 |
| Business Interruption | $50,000.00 |
| **TOTAL** | **$101,002.06** |

However, the court must also account for those sums already paid by Auto-Owners and accepted by Blues To You.  Auto-Owners issued Blues To You two checks;[9] one for $5,000 from its extra expense coverage and one for $35,075.68 from its BPP coverage.  *See* Defense

---

[9] Auto-Owners also presented additional evidence of a third check, in the amount of $42,201.77, which Miller endorsed on behalf of Blues To You.  *See* Defense Exhibit JJJ.  Although endorsed, it is unclear to the court whether this money has been spent by Blues To You as it did not address the additional check on the record.  The check specifies that the sums stem from Blues To You's legal liability coverage of $200,000.  *See* Defense Exhibit JJJ; Plaintiff's Exhibit 1 at 7.  This coverage was unaddressed by the parties.  Accordingly, the court will exclude it from the damage calculations.

Exhibits AA, BB.  Blues To You cashed these checks.  *See* ECF Doc. 158 at 141.  As a result, Blues To You's remaining business interruption coverage under the 2019 policy was $45,000, and its remaining BPP coverage was $72,334.32 ($107,410 minus $35,075.68).  Excluding the food and business interruption losses, the total loss in Table 5 is $41,422.33.  When the food loss ($9,579.73) and the remaining business interruption loss ($45,000) are added, the total compensatory damages to which Blues To You is entitled on the 2019 loss is $96,002.06.  Blues To You's compensatory damages award for the 2019 breach of contract claim must be remitted to that sum.

With regard to the 2020 Loss, because Auto-Owners asserted it was investigating the claim when Blues To You filed suit, much of the documentary support of the kind created in relation to the 2019 claim had yet to be developed.  Consequently, the only two forms of coverage implicated by the jury's verdict on the 2020 breach of contract claim were the BPP coverage and the business interruption coverage.

| TABLE 6: 2020 Loss | |
| --- | --- |
| Xactimate Repairs | $85,372.17 |
| Business Interruption | $50,000.00 |
| TOTAL | **$135,372.17** |

Blues To You had $110,100 in BPP coverage and $50,000 in business interruption coverage under the 2020 policy.  As a result, Blues To You's proven compensatory damages for the 2020 loss were $135,372.17, as indicated in Table 6, above.  Blues To You's compensatory damages for the 2020 breach of contract claim must be remitted to that sum.

Based on the court's analysis, Blues To You proved recoverable general compensatory damages totaling $231,374.23 (2019: $96,002.06 + 2020: $135,372.17).[10]

---

[10] The remittitur of the compensatory damages award does not also require alteration of the punitive damages award.  Because Blues To You's punitive damage award ($375,000) is less than two times the remitted compensatory damage award it remains within Ohio's cap on punitive damages, the punitive

The total damage award, after remittitur, would be: $231,374.23 for compensatory

damages, plus $154,665 for consequential damages: $386,039.23.  The addition of $375,000 for

punitive damages makes the judgment amount: $761,039.23.

### G.    Result

The question of whether this remitted award or a new trial (and if so the extent of such an

order) should be awarded has troubled the court for much of its consideration of the parties'

post-trial motions.  On one hand, the appropriate evidence of compensatory damages can be

calculated.  On the other hand, because the parties fundamentally erred in how they argued and

presented their claims, even though a compensatory damage award *can* be recalculated, one

wonders whether it *should* be recalculated.  Or whether an entirely new trial is due.

The question of whether a partial or a full new trial should be ordered turns on whether

the issue in question is "sufficiently separate that a new trial on damages alone would be fair."

*Broan Mfg. Co. v. Associated Distribs.*, 923 F.2d 1232, 1241 (6th Cir. 1991).  This is consistent

with the courts' uses of remittitur when damages are "readily identifiable and measurable."  *See*

*Strickland v. Owens Corning*, 142 F.3d 353, 359 (6th Cir. 1998) (quoting *Kolb v. Goldring, Inc.*,

694 F.2d 869, 875 (1st Cir. 1982)).  However, a partial new trial, generally, requires that the

court be satisfied that liability has properly been determined, in order to direct a new trial solely

on the issue of damages.  *See Moore's Federal Practice – Civil* § 59.14.

Here, it appears to the court that the jury's liability finding largely rests on its credibility

determinations regarding the various witnesses presented.  Although the documentary evidence

---

damages award need not be proportionally remitted.  *See Kramer Consulting, Inc. v. McCarthy*,
No. C2-02-116, 2006 U.S. Dist. LEXIS 12857, at *26-27 (S.D. Ohio Mar. 8, 2006) (finding that a
proportional remittitur of the jury's punitive damages award based on the remittitur of the compensatory
damages award was not require based on the punitive damages award's discretionary nature and falling
within Ohio's cap); *Harrell v. Allstate Ins. Co.*, No. 1:11-CV-209, 2011 U.S. Dist. LEXIS 32600, at *8
(N.D. Ohio 2011) (noting Ohio's punitive damages cap).

for breach of contract or bad faith may not be the strongest this court has ever seen, if the jury believed the witnesses, the weaknesses could be accounted for.  Such credibility findings strike at the heart of the jury system and must be afforded the utmost respect.  Additionally, the compensatory damages were identifiable from the evidence.  But, in fairness, Blues To You's presentation of ACV evidence was wanting and such evidence was a precondition to Auto-Owners' liability in many respects.  In balancing these considerations, ordering remittitur or, alternatively, a partial new trial on compensatory damages preserves the jury's liability verdict while remedying those aspects of the trial clearly connected to the jury's confusion over the evidence presented.

Because the court has found that remittitur is necessary, Blues To You has the option of either accepting the remitted damages award or proceeding with a new trial on the issue of compensatory damages.  *See Farber v. Massillon Bd. Of Educ.*, 917 F.2d 1391, 1396 (6th Cir. 1990) ("[A] forced remittitur without the offer of the option of a new trial on the issue of damages constitutes error.").

Blues To You must inform the court of its decision within 30 days of this order.  Should Blues To You consent to the remittitur, it will not have the ability to appeal the remitted damages award.  *See Donovan v. Penn. Shipping Co. Inc.*, 429 U.S. 648, 649 (1977).  If remittitur is accepted, the court would issue an amended judgment reflecting the remitted damages award and attorney's fees and costs, starting the time from which Auto-Owners could file a notice of appeal.  Fed. R. Civ. P. 4.

## V.    Blues To You's Motion for Attorney's Fees

Should Blues To You accept the remitted damages award, its motion for attorney's fees and costs (ECF Doc. 153) will be GRANTED.  As explained in the court's contemporaneously

52

filed order, Blues To You is entitled to recover $174,889.70 in attorney's fees (accounting for the $15,000 retainer already paid to plaintiff's counsel) and $18,543.73 in litigation expenses. Additionally, if Blues To You consents to the remittitur, its motion for prejudgment interest (ECF Doc. 154) will also be GRANTED, and prejudgment interest in the amount of $12,551.73 will be allowed.

Should Blues To You not accept the remittitur and elect to have the case proceed to a new trial on compensatory damages, the court would overrule the motions for attorney fees, expenses, and prejudgment interest without prejudice on the ground that Blues To You would not then have been the prevailing party entitled to the recovery of fees and expenses. Should it prevail on retrial, Blues To You could refile motions for attorney fees, expenses, and prejudgment interest.

## VI.   Conclusion

Accordingly, Auto-Owners' motion for judgment as a matter of law (ECF Doc. 163) is DENIED. Auto-Owners' motion for a new trial (ECF Doc. 164) and motion for a remittitur (ECF Doc. 165) are conditionally GRANTED, to the extent they both argue for a reduction of compensatory damages based on the policy limits and the insufficient evidence of ACV amounts. In all other respects, they are DENIED.

As to the conditional grant, Blues To You has the option of accepting a remittitur of the general compensatory damages to $231,374.23 or proceeding to a new trial. If Blues To You does not consent to a remittitur within 30 days of this Order, the case must be retried.

Should Blues To You accept the remittitur, as reflected in the contemporaneously filed order, its motion for attorney's fees (ECF Doc. 153) will be granted as to the court's findings of a reasonable rate and hours expended. Additionally, if remittitur is accepted, Blues To You's

motion for prejudgment interest (ECF Doc. 154) will be granted.  In that case, the total judgment amount will be $761,039.23, consisting of punitive, consequential, and the remitted compensatory damages, rather than the total of $1,246,333 awarded by the jury.  Also, Blues To You would be awarded $174,889.70 in attorney's fees, $18,543.73 in litigation expenses, and $12,551.73 in prejudgment interest.  If Blues To You does not accept the remittitur, its motions for attorney's fees and prejudgment interest will be denied without prejudice.

Thus, Blues To You must either consent within 30 days to remittitur of the compensatory damage awards to $231,374.23, or the case must be retried within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: October 17, 2022

Thomas M. Parker

United States Magistrate Judge