IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BLUES TO YOU, INC., | ) | Case No. 1:21-CV-00165 |
| *doing business as* Wilbert's | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | **ORDER** |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

As discussed in this court's contemporaneously filed order resolving the defendant
Auto-Owners (Mutual) Insurance Company's motions for judgment as a matter of law, a new
trial, and remittitur, the jury's compensatory damages award for both the breach of contract and
bad faith claims should be remitted.  Blues To You, Inc. has 30 days from the date of the order to
inform the court whether it will consent to the remitted damages award or elect a new trial on the
issue of compensatory damages.

Blues To You has moved for attorney's fees and litigation expenses.  ECF Doc. 153.  It
contends that the complexity of the case, its breach of contract and bad faith arguments, and
counsel's 13 years of experience justified an hourly rate of $385.  ECF Doc. 153 at 1-4.  Based
on Blues To You's counsel's experience with litigating in New York City and Ohio and his work
on the litigation without more than the retainer submitted by the client, it argues that a rate of

$385 is reasonable.  ECF Doc. 153 at 5-7.  Blues To You asserts that its counsel spent 705.10[1]

hours working on the case for a total of $271,463.50 in fees and $21,697.52 in litigation

expenses.  ECF Doc. 153 at 7-10.  It attached its counsel's timekeeping records and receipts in

support of the litigation expenses.  ECF Doc. 153-1; ECF Doc. 153-2; ECF Doc. 153-3.

Auto-Owners opposes Blues To You's motion, asserting that: (1) the jury should not have

awarded punitive damages and, thus, Blues To You is not entitled to attorney's fees; (2) Blues

To You overstated the time its attorney spent because the attorney spent more time than

Auto-Owners' representation; (3) Blues To You's attorney's rate is excessive; and (4) Blues To

You is not entitled to recover litigation expenses.  ECF Doc. 166 at 1-6.

In its reply brief, Blues To You largely reiterates its arguments, explaining the alleged

concerns Auto-Owners had with specific reported hours its counsel worked.  *See* ECF Doc. 170.[2]

Blues To You also attached its fee agreement, which indicated it had hired its counsel based on a

$15,000 retainer.  ECF Doc. 170-1.

Under Ohio law, a prevailing party may recovery attorney's fees if the losing party acted

in bad faith, "vexatiously, wantonly, obdurately, or for oppressive reasons."  *See Accettola v. Big

Sky Energy*, 2018-Ohio-5076, ¶ 43 (internal quotation marks omitted).  A party seeking

attorney's fees "bears the burden of establishing entitlement to an award and documenting the

---

[1] Blues To You's motion contends that counsel put in 706.2 hours, but the supporting documentation only
states that he worked 705.10 hours.  *See* ECF Doc. 153-2.  Because the 705.10 hours is supported by the
records submitted, the court will use that as the starting point for its analysis.

[2] The parties' conduct in these specific filings is of particular concern to the court.  Auto-Owners
contends that it is "inconceivable" that Blues To You's counsel could work more hours than the combined
hours of its two counsel and comes close to making personal attacks on opposing counsel's hours on
certain days.  *See* ECF Doc. 166 at 2.  Blues To You retorts that, perhaps, had Auto-Owners' counsels put
in more hours they may have been more successful.  ECF Doc. 170 at 5.  Counsel would do well to
remember that: "When lawyers in the course of a trial charge each other with ignorance or dishonest or
improper conduct, they give to the public a bad impression, not only of themselves but of the professional
generally. . . . Lawyers that do this are like birds that befoul their own nests."  *See* Asher L. Cornelius,
*Trial Tactics* 501, 512 (1932) (quoting Hon. Chester A. Fowler, "Some Practices of Lawyers Displeasing
to the Court" (1929)).

appropriate hours expended and hourly rates." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley v. Echerhart*, 461 U.S. 424, 437 (1983)). "The starting point is the 'lodestar' amount, which is the number of hours reasonably expended on the case times an hourly fee." *Id.* (internal quotation marks omitted).  The prevailing market rate, accounting for lawyers of comparable skill and experience, serves as a guideline for a "reasonable" hourly rate.  *See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

After establishing the "lodestar," the court may consider other factors in determining a reasonable hourly rate, including the following *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The Supreme Court, however, has noted that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983).  Additionally, supporting documentation of the hours billed "must be of sufficient detail and probative value" that the court may determine "with a high degree of certainty that such hours were actually and reasonably expended." *Imwalle*, 515 F. 3d at 553 (internal quotation marks omitted).

In addition to whether a party "prevails," the Supreme Court has held that the degree of an attorney's success should also be considered – as the "most critical factor." *See Farrar*, 506 U.S. at 114.  "[W]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at

all." *Id.* at 115 (internal citations omitted).  When assessing the extent of the relief obtained, the court must compare the amount of damages sought to the amount awarded.  *Id.* at 114.

Courts may also consider the quality of representation provided.  *See Knox v. John Varvatos Enterprises Inc.*, 520 F. Supp. 3d 331, 342-43 (S.D.N.Y. 2021), *aff'd sub nom. Chaparro v. John Varvatos Enterprises, Inc.*, No. 21-446-CV, 2021 U.S. Dist. LEXIS 32838 (2d Cir. Nov. 4, 2021) (noting that while the prevailing attorneys provided "extraordinary" representation a reduction in their hours was necessary based on their lack of experience in the specific area of the law); *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046-47 (9th Cir. 2000) (remanding the district court's attorney fee determination because the district court did not articulate why the counsel's poor performance rendered the hourly rate unreasonable); *Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1317 (S.D. Fla. 2004) (reducing an attorney's hours by 20% due to counsel's poor performance on three specific occasions).

A.      **Reasonable Hourly Rate**

The court concludes that Blues To You's counsel's hourly rate is not reasonable for the Cleveland area and a downward departure is necessary.  In support of its motion, Blues To You attached an affidavit from counsel, noting his education, legal experience, and particular experience with plaintiff's litigation.  *See* ECF Doc. 153-1.  This provides little context or justification for the proposed hourly rate.  In opposition, Auto-Owners contends that, in comparison to their own counsels' rates, plaintiff's counsel's rate is excessive and cites the Ohio State Bar Association's study on the Economic of the Legal Practice.[3]  *See* ECF Doc. 166 at 4-6. Although opposing counsel's fees are wholly irrelevant, based on the minimal information

---

[3] Auto-Owners did not provide the entire study or even portions of it, but rather cropped portions of the study's findings in its memorandum.  *See* ECF Doc. 166 at 5-6.  To gain further context, the court obtained a copy from the circuit library and takes judicial notice of the study's findings.  Fed. R. Evid. 201.

provided by Blues To You in support, the court find Blues To You's proposed hourly rate to be unreasonable for a solo practitioner in the Cleveland area.

This court has historically turned to the Ohio State Bar Association's study for guidance on determining reasonable attorney's fees. *See Wheatt v. City of E. Cleveland*, No. 1:17-CV-377, 2019 U.S. Dist. LEXIS 147551, at *26-28 (N.D. Ohio Aug. 29, 2019); *Postovic v. D2 Mgmt., LLC*, No. 5:19-CV-1222, 2019 U.S. Dist. LEXIS 213392, at *6-7 (N.D. Ohio Dec. 11, 2019); *Goff v. Ruff Neon & Lighting Maint., Inc.*, No. 1:16-CV-194, 2017 U.S. Dist. LEXIS 19917, at *6-10 (N.D. Ohio Feb. 13, 2017).  It provides the following information regarding hourly billing rates in Cleveland:

| Category Measured:[4] | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|
| Size of Firm: 1 | $232 | $180 | $225 | $250 | $395 |
| Years in Practice: 11 to 15 | $273 | $225 | $250 | $300 | $425 |
| Downtown Cleveland Office | $320 | $240 | $313 | $395 | $595 |
| Insurance Specialty | $207 | $150 | $170 | $275 | $400 |
| Sole Practitioner with office outside of home | $239 | $200 | $225 | $250 | $395 |

Blues To You's proposed hourly rate of $385 an hour is unreasonable based on rates in the Cleveland area, Blues To You's success, and the quality of counsel's performance.  As seen in the chart above, $385 an hour near the 95th percentile of attorneys in practically every

---

[4] *The Economics of Law Practice in Ohio in 2019*, Ohio State Bar Association, 44-45; (2022), https://www.ohiobar.org/membership/Practice-Management-Tools-Services/economics-of-law-practice-study/.

category.  This alone gives the court pause in evaluating Blues To You's proposed hourly rate.
But Blues To You also failed to provide any objective evidence that $385 was counsel's
regularly charged rate, offering only counsel's bare assertion on the point.  *See* ECF Doc. 170
at 12.  The cases Blues To You cited in support of the reasonableness of this rate are, generally,
of limited persuasiveness given distinctions in the subject matter litigated, the city in which the
matter was litigated, the quality of representation, or simply the age of the case.  *See* ECF
Doc. 153; ECF Doc. 170.  But, on the other hand, Blues To You's counsel has been practicing
for 13 years, doing so primarily for plaintiffs, and has prior experiencing in insurance-related
matters.  *See* ECF Doc. 153-1.

When the court evaluates Blues To You's degree of success and the quality of
representation, it finds more grounds upon which to discount counsel's hourly rate.  During
closing argument Blues To You requested $622,000 in compensatory damages.  *See* ECF
Doc. 160 at 101-102.  Based on the court's remittitur calculations, less than half of that was
actually substantiated by the evidence.  And that reduction was wholly avoidable.

As is likely apparent from the court's contemporaneous order on Auto-Owners' motion
for a new trial, there were two fundamental misunderstandings of insurance law that crippled
counsel's performance and, thereby, his client's case.  First, there was error in counsel's belief
that the CGL coverage limits applied.  Had Blues To You identified that the $300,000 coverage
limit did not apply prior to the proceedings, the entire proofs of loss could have been revisited
given their obvious misunderstanding of the applicable coverages.  Second, there was error in
counsel's contention that because Blues To You had a "replacement cost policy" it was entitled
to the full replacement value of damaged items, even if they had not actually been replaced or
repaired.  Although the policies permitted the recovery of replacement costs, proof of actual cash

value of lost or damaged items and actual replacement or repair thereof was a prerequisite to receiving the RCV for any item, per the express language of the policy. Again, had this error been rectified sooner, the entire discussion of remittitur could likely have been avoided, as it is necessary almost exclusively because of the plaintiff's failure to provide evidence of the ACV values for quoted material.

The court has considered not only Blues To You's counsel's performance and its impact on the degree of success, but also the state bar association's analysis. There was a greater than 50% difference between the compensatory damages requested by Blues To You and the amount supported by the record. Such a disjunction cannot be ignored. The court finds that imposing a similar reduction on Blues To You's counsel's hourly rate would be excessive. However, a 30% reduction in Blues To You's requested hourly rate results in an hourly rate of $269.50. Based on the state bar association's materials, consideration of counsel's performance, and the court's experience, this is a reasonable hourly rate.

## B. Reasonable Number of Hours

Reviewing Blues To You's counsel's submissions, the court concludes that the hours billed were generally reasonable and their descriptions sufficiently detailed. From the initial case review to the preparation of the memorandum in support of his attorney's fees, counsel represented that he worked a total of 705.10 hours (measured in tenths of an hour), including dispositive motions, two separate mediations, and a six-day trial. ECF Doc. 153-2 at 1-14.

Auto-Owners contends that opposing counsel's hours are overstated, noting several entries where circumstances appear to indicate that counsel could not have worked the hours purported. *See* ECF Doc. 166 at 2-3. On review of counsel's time entries and Blues To You's explanations in its reply brief, the asserted discrepancies are accounted for by counsel working

7

late or while commuting.  One noted instance is of slight concern to the court, however, relating to the work counsel performed on April 1.  Blues To You's counsel represents in the reply brief that he worked from 8:30 AM to midnight.  ECF Doc. 170 at 5-6.  However, during that time, he also represents that he picked up his son from school; although counsel has indicated a willingness to work while commuting, the court finds it unreasonable that no time was deducted for the time counsel picked up a child from school.  ECF Doc. 170 at 5-6.  Accordingly, the court will deduct a half hour of billable time from that day to account for that interaction.

Auto-Owners also contests the time Blues To You's counsel attributed to travelling.  ECF Doc. 166 at 3.  The trial court has discretion to award travel time.  *See Disabled Patriots of Am., Inc. v. Reserve Hotel, Lt.*, 659 F. Supp.2d 877, 889 (N.D. Ohio Aug. 20, 2009) (citing *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)).  Generally, parties are entitled to counsel of choice, regardless of travel.  *See Disabled Patriots of Am., Inc.,* 659 F. Supp.2d at 889.

Auto-Owners does not challenge the reasonableness of opposing counsel's travel – other than arguing that it should not bear that burden.  But Blues To You had every right to choose New York-based counsel and counsel's travel was not excessive or unreasonable.  Blues To You's counsel traveled from New York to Cleveland and back on October 25, 2021 for depositions and to Cleveland on April 3, 2022 for trial, although counsel's return trip is not noted.  *See* ECF Doc. 153-2 at 1-14.  Given that counsel billed 8 and 10 hours respectively on each of these days and indicated he did other tasks related to the case, it is not unreasonable to account for these hours.  *See* ECF Doc. 153-2 at 1-14.  Thus, the court credits Blues To You's counsel with working 704.60 hours, deducting 0.5 hours for counsel picking up his child.

8

### C.    Adjusted Lodestar Calculation

Given the court's downward adjustment of counsel's hourly rate, and the court's half hour deduction of his time, the court calculates the revised lodestar to be: $269.50 x 704.60 hours = $189,889.70.

### D.    Litigation Costs

Blues To You also seeks payment for various litigation-related expenses, including transcripts, transcription and reporting services for depositions, flights, and subpoenas.  *See* ECF Doc. 153; ECF Doc. 153-2 at 14-16.  Auto-Owners contends that Blues To You should not be awarded litigation expenses as they were not specifically identified in the jury's verdict form. ECF Doc. 166 at 12.

Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorney's fees [] should be allowed to the prevailing party."  An award of costs under Rule 54(d) is presumed. *Johnson v. Metro. Gov't of Nashville & Davidson County*, 502 F. App'x 523, 543 (6th Cir. 2012).  In order to award costs, the district court must determine that:

> [T]he expenses are allowable cost items and that the amounts are reasonable and necessary. As long as statutory authority exists for a particular item to be taxed as a cost, [the court] shall not overturn a district court's determination that the cost is reasonable and necessary, absent a clear abuse of discretion. Thus, we shall review carefully whether an expense is recoverable, but once we determine that it is, we defer to the district court, which is in the best position to determine whether the cost is recoverable.

*Id.* (quoting *Baker v. First Tenn. Bank Nat'l Assoc.*, 142 F.3d 431 (6th Cir. 1998) (table)).

Blues To You's litigation expenses are, generally, reasonable.  The deposition-related costs were almost exclusively of individuals who testified at trial.  But Blues To You did pay and subpoena one individual, Jimmy Zadd, who, as far as the court can discern, has never been identified, named, or implicated in any of the proceedings.  *See* ECF Doc. 153-2 at 15; ECF

Doc. 153-3 at 22.  Accordingly, the court subtracts the cost of issuing his subpoena and his witness fee ($43.62 and $53.92, respectively) from Blues To You's litigation expenses.

Additionally, Blues To You seeks repayment for Richard Andrews' professional fees in the amount of $3,056.25.  ECF Doc. 153-2 at 16.  Although Andrews was mentioned at trial as having conducted a business loss analysis for McEaneney as part of the proof of loss, Andrews never testified.  As a result, his role was analogous to a non-testifying expert because he is asserted to have provided some business interruption estimates.  However, such fees are not recoverable.  *See Hildebrandt v. Hyatt Corp.*, No. 1:02-CV-0003, 2006 U.S. Dist. LEXIS 59902, at *38-40 (S.D. Ohio Aug. 24, 2006) (citing *Soberay Machine & Equipment Co. v. MRF Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999)) (denying a requested fee reimbursement for the costs associated with a non-testifying consultant).  The court reduces Blues To You's requested fees by the amount of the expenses attributed to Zadd and Andrews, resulting in an award of $18,543.73 in litigation expenses.  Because Blues To You provided its counsel with a $15,000 retainer, those funds must also be deducted from the attorney fee award.  Accordingly, in a contemporaneously filed order, Blues To You would be awarded $174,889.70 ($189,889.70 minus $15,000) in attorney fees and $18,543.73 in litigation expenses, totaling in $193,433.43, should it accept the court's remitted damages award.

## II.     Plaintiff's Motion for Prejudgment Interest

Blues To You contends that it is entitled to prejudgment interest for the compensatory damages at a rate of 3% per annum, to fully compensate it for the damages caused by Auto-Owners.  ECF Doc. 154.  Auto-Owners opposes the motion, asserting that such an award would overcompensate Blues To You but, if awarded, does not contest the 3% rate.  ECF Doc. 167.

10

Under Ohio law, a party is entitled to prejudgment interest on the compensatory damages awarded for a breach of contract claim.  *See Scotts Co. LLC v. Farnam Cos.*, No. 206-CV-488, 2010 U.S. Dist. LEXIS 93970, at *22 (S.D. Ohio Sept. 8, 2010).  In determining the amount of interest owed, the court looks to when the claim became due and payable and what the legal rate of interest should apply.  Ohio Rev. Code § 1343.03(A); *Scotts Co. LLC*, 2010 U.S. Dist. LEXIS 93970, at *23.  Section 5703.47 of the Ohio Revised Code provides for interest at a rate determined annually by the Ohio Tax Commissioner.  Ohio Rev. Code § 5703.47.  The Ohio Tax Commissioner determined that the applicable rate was 5% in 2020 and 3% in 2021 and 2022.[5]

To make the aggrieved party whole, the court applies the interest rate to the period of time between the accrual of the claim and the judgment.  *Scotts Co. LLC*, 2010 U.S. Dist. LEXIS 93970, at *23.  Under Ohio's statute, the Sixth Circuit has held that "money damages become due and payable on a contract at the time of the breach."  *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 378 (6th Cir. 2006).  After liability for a contract breach has been established, the trial court lacks discretion in awarding pre-judgment interest.  *Crown Equip. Corp. v. KeHE Distribs., LLC,* No. 3:17-CV-1711, 2019 U.S. Dist. LEXIS 172064, at *17 (N.D. Ohio Oct. 3, 2019) (citing *Keller & Kehoe, L.L.P. v. Smart Media of Delaware, Inc.*, No. 10-3607, 2016-Ohio-5409, at ¶35 (8th Dist. 2016)).  Rather, the trial court may only determine when the money became due and payable.  *Id.*

Because the jury found that Auto-Owners breached both insurance contracts, Blues To You is entitled to prejudgment interest on the compensatory damages award.  *Crown Equip. Corp.*, 2019 U.S. Dist. LEXIS 172064, at *17; *Scotts Co. LLC*, 2010 U.S. Dist. LEXIS 93970, at *22.  The jury did not make specific findings as to what conduct was a breach of the insurance

---

[5] See Annual Certified Interest Rates, Ohio Dept. of Taxation, https://www.tax.ohio.gov/ohio_individual/individual/interest_rates.aspx (last visited Oct. 17, 2022).

contracts.  But they were instructed to consider Auto-Owners' failure to timely respond to the proofs of loss, either by accepting, rejecting, or investigating the claims, as a form of breach.  *See* ECF Doc. 160 at 136-137.  Based on its failure to comply with the timelines articulated in the policies, Auto-Owners' breaches occurred on March 13, 2020 and January 9, 2021, for the first and second claims, respectively.[6]  *See* ECF Doc. 155 at 113-114; ECF Doc. 156 at 168. Consequently, as to the 2019 loss, Auto-Owners is responsible for $3,803.36 for 2020, $2,880.06 for 2021, and $821.66 in 2022, totaling to $7,505.08.[7]  As to the 2020 loss, Auto-Owners is responsible for $3,932.60 for 2021 and $1,114.05 in 2022, totaling in $5,046.65.[8]  In total, Auto-Owners must pay $12,551.73 in prejudgment interest.

Should Blues To You accept the remitted damages award, its motion for attorney's fees and costs (ECF Doc. 153) is GRANTED by this order.  Blues To You is entitled to recover $174,889.70 in attorney's fees, $18,543.73 in litigation expenses.  Additionally, if Blues To You consent to the remittitur, its motion for prejudgment interest (ECF Doc. 154) is GRANTED in the amount of $12,551.73.  If remittitur is accepted, the parties would have the right to appeal the court's determinations regarding attorney fees, expenses, and prejudgment interest.  If Blues To You elects to reject the remittitur and proceed to a new trial, this order shall be VACATED by the court, the motions for fees, expenses and prejudgment interest would then be denied without prejudice.

---

[6] Blues To You's motion asserts that the breaches occurred on March 17, 2020 and January 12, 2021, for the first and second losses, respectively.  *See* ECF Doc. 154 at 5.  The *evidence,* however, supports that McEneaney filed his first proof of loss with Coduto on February 21, 2020 and his second loss with Feielin January 9, 2021, for the first and second proof of losses, respectively.  *See* ECF Doc. 155 at 113-112; ECF Doc. 156 at 168.  The Court will use the dates supported by the record.

[7] This calculation was reached accordingly: $[(5\%*\$96,002.06)*(290/366)] = \$3,803.36$ for 2020, $(3\%*\$96,002.06) = \$2,880.06$ in 2021, and $[(3\%*\$96,002.06)*(104/364.54)] = \$821.66$ in 2022; 2020 was a leap year.

[8] This calculation was reached accordingly: $[(3\%*\$135,372.17)*(353/364.54)] = \$3,932.60$ in 2021, and $[(3\%*\$135,372.17)*(100/364.54)] = \$1,114.05$ in 2022.

**IT IS SO ORDERED.**

Dated: October 17, 2022

Thomas M. Parker
United States Magistrate Judge